KIRKLAND CONSTRUCTION COMPANY *vs.* KURT A. JAMES
& others.[1]

No. 94-P-1075.

Middlesex. October 5, 1995. - December 27, 1995.

Present: BROWN, GILLERMAN, & FLANNERY, JJ.

*Practice, Civil,* Motion to dismiss. *Attorney at Law,* Attorney-client relationship, Negligence. *Negligence,* Attorney at law, Standard of care.

A Superior Court judge erred in allowing the defendants' motion to dismiss, under Mass.R.Civ.P. 12 (b) (6), the plaintiff's claims against an attorney and the partners of his law firm for negligent misrepresentation, negligent supervision and violation of G. L. c. 93A, arising from a letter the attorney sent to the plaintiff assuring that the attorney's client could pay for certain construction work the plaintiff was about to undertake for the client, where the allegations of the complaint, viz., negligent misrepresentation by the defendants upon which the plaintiff reasonably relied, if proved, would entitle the plaintiff to relief. [561-564] BROWN, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on May 7, 1993.

The case was heard by *Judith A. Cowin,* J., on a motion to dismiss.

*Jack R. Pirozzolo* for the plaintiff.
*Bret A.S. Fausett* for the defendants.

FLANNERY, J. Write Now, Inc. (Write Now), an office supply firm, wanted the plaintiff, Kirkland Construction Company (Kirkland), to renovate space in a building for its use as a retail store. Kirkland was able and willing to do the job, but it demanded assurances that Write Now could pay for the work. The assurances were provided by Write Now's lawyers in the form of a letter to Kirkland from Kurt A. James,

---

[1] The partners of the law firm of Choate, Hall & Stewart.

an associate with the law firm of Choate, Hall & Stewart (Choate, Hall). Kirkland performed under the contract, but Write Now failed to pay for the work and, having entered into an assignment for the benefit of creditors, is unable to do so.[2]

Kirkland brought this action against the lawyers, alleging negligent misrepresentation, negligent supervision of the associate-author of the letter, a violation of G. L. c. 93A, and alleging that the partners of Choate, Hall are liable for the torts of its members.[3] A judge of the Superior Court granted the defendants' motion to dismiss the action, pursuant to Mass.R.Civ.P. 12(b) (6), 365 Mass. 755 (1974), on the grounds that the lawyers owed no duty to Kirkland and that, because the lawyers were merely a conduit for assurances by Write Now, there was no foreseeable reliance by Kirkland on any representations by the lawyers. Kirkland appeals from the order dismissing its action, and we now reverse.

The lenient standard by which a complaint is measured on a motion to dismiss for failure to state a claim is familiar. The allegations are taken as true, doubts are resolved in favor of the complainant, and the motion must be denied unless it is certain that no set of provable facts could entitle the plaintiff to relief. See *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 68 (1992); *Kipp* v. *Kueker*, 7 Mass. App. Ct. 206, 210 (1979). Kirkland's complaint alleges that it demanded "assurances that Write Now had made financial arrangements that would enable it to pay" if Kirkland did the job, that Choate, Hall undertook, on behalf of Write Now, to provide assurances to Kirkland, that it negligently made written representations upon which it knew Kirkland would rely, that certain of the representations were false, and that

---

[2] We derive the facts herein from the complaint, which appends and incorporates the defendants' letter of June 22, 1990, and from the motion judge's memorandum of decision and order on the defendants' motion to dismiss.

[3] General Laws c. 108A, §§ 13 & 15 (1994 ed.), read together, provide that partnership liability resulting from "any wrongful act or omission of any partner" is to be borne jointly and severally by all of the partners.

Kirkland reasonably relied on the misrepresentations — to its loss.

The defendants moved to dismiss on the grounds that their client was Write Now not Kirkland, that Kirkland's interpretation of and reliance on Choate, Hall's letter was not reasonable or foreseeable, that Kirkland failed to allege conduct violative of c. 93A, and that the partnership liability claims were entirely derivative and thus lifeless.

The Superior Court judge allowed the defendants' motion, reasoning that, as counsel for Write Now, Choate, Hall owed Kirkland no duty except "to refrain from relaying information that the lawyer knows or should know is untrue or misleading" and to act within the boundaries of S.J.C. Rule 3:07, Canon 7, DR 7-102, 382 Mass. 785 (1981). As a "further reason" for her decision, the judge ruled that Choate, Hall's letter, unlike an attorney's opinion letter, "was merely . . . a conduit for information" from Write Now. Therefore, she concluded, there was no reasonable or foreseeable reliance by Kirkland upon any representations by Choate, Hall.

The defendants contend that they cannot be subject to malpractice-type liability for a misrepresentation to a nonclient. That contention is correct, but here it is a straw man. Kirkland does not allege that the defendants were in breach of a duty growing out of an attorney-client relationship between them. Contrast *Page.* v. *Frazier*, 388 Mass. 55, 61-62 (1983). Kirkland agrees it knew that the Choate, Hall lawyers represented Write Now and that they could not represent Kirkland in any manner adverse to Write Now. See *Beecy* v. *Pucciarelli*, 387 Mass. 589, 597 (1982). Between adversaries the lawyer can have only one loyalty, and for a mere mistake there is no liability to a nonclient.

Kirkland argues, instead, that its claim is derived from a related, but different principle, namely, that in certain circumstances a lawyer owes a duty of due care to a nonclient who he or she knows will rely on the services rendered. Compare *Page* v. *Frazier*, 388 Mass. at 64-65; *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 524, cert. denied,

493 U.S. 894 (1989); *Spinner* v. *Nutt*, 417 Mass. 549, 552 (1994).

This doctrine has been less readily applied to lawyers than to other service providers, e.g., surveyors and accountants. See Prosser & Keeton, Torts § 107, at 746-747 (5th ed. 1984). And courts have imposed several limiting principles in cases involving lawyers. In *Lamare* v. *Basbanes*, 418 Mass. 274, 276 (1994), for example, the Supreme Judicial Court stated that it "will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duty the attorney owes to his or her client." In *Logotheti* v. *Gordon*, 414 Mass. 308, 311 (1993), the court indicated that an independent duty will be more readily found where, as here, the service is intended to benefit the client as well as the third party. Similarly, the Restatement (Second) of Torts § 552(2) (a) (1977), limits the provider's duty to "the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information," rather than to persons foreseeably harmed. And in *Mehaffy, Rider, Windholz & Wilson* v. *Central Bank Denver, N.A.*, 892 P.2d 230, 235-237 (Colo. 1995), the court more readily allowed liability for a misrepresentation of material fact in a nonadversary setting.[4]

In considering the present appeal, we emphasize that we are not deciding liability. The question is whether any set of provable facts would entitle Kirkland to relief. First, Kirkland does not allege that it sought legal advice from Choate, Hall; it sought assuring information from the lawyers about their client. Contrast *DaRoza* v. *Arter*, 416 Mass. 377, 381 (1993). Second, the complaint may be read to allege that Choate, Hall made factual representations about arrangements its client "had made to ensure payment to Kirkland."[5]

---

[4]The Colorado Supreme Court observed generally, "A theory of negligent misrepresentation is proper where a professional knows that its representation will be relied upon by a nonclient for business purposes." *Mehaffy, Rider, Windholz & Wilson* v. *Central Bank Denver, N.A., supra* at 236.

[5]In paragraph 15 of its complaint, Kirkland particularizes representations that it says were false when they were made: "(1) that a $250,000

Choate, Hall's objective was to induce Kirkland to enter into a contract for the benefit of its client, itself, and, incidentally, Kirkland. That combination, if Kirkland can prove it, may well be significant. See *Greycas, Inc.* v. *Proud*, 826 F.2d 1560, 1563, 1565 (7th Cir. 1987) (lawyer liable to nonclient lender for inducing loan to client by negligent misrepresentation). Third, Kirkland alleges that Choate, Hall knew and intended that Kirkland would rely on the representations in its letters, and Kirkland reasonably so relied.[6] And fourth, the representations were allegedly false, careless, and harmful. Those allegations, if they are proven, are the stuff of liability.

In her memorandum of decision ordering the dismissal, the judge stresses that "it is clear that Choate was simply representing its own client in communicating that client's position to Kirkland[,]" and "[t]he defendants cannot be held accountable for any alleged misrepresentations when Choate made no representations of its own but simply relayed the position of its client."[7]

Whether Choate, Hall was purely the messenger is not so obvious as the judge suggests. Its letter contains unqualified representations, such as "[t]his amount . . . is available for payment of the initial Contract Sum," and typical hedging phrases ("our client tells us" and "according to our client")

---

Secured Term Note 'is available for payment of the initial Contract Sum', (2) that Write Now's 'Landlord has agreed to disburse funds due under the above contract payable jointly to [Write Now] and [Kirkland]' and (3) that Write Now 'agrees not to draw funds from the above sources for payment of obligations under the construction contract unless there remains sufficient funds from the above sources (or from other sources disclosed to [Kirkland]) to make the remaining balance of payments then due under the construction contract'."

[6]Kirkland's complaint may be read to allege that Choate, Hall intended that Kirkland rely on the representations. See Restatement (Second) of Torts § 552(2)(b) (1977). Our standard for liability is the less demanding, reasonably foreseeable reliance. See *DaRoza* v. *Arter*, 416 Mass. at 382-383.

[7]The judge also notes that the Choate, Hall communication is not an opinion letter: "No statements here were made regarding any legal issues." Kirkland does not allege that the document is an opinion letter, and the likelihood of liability would not be greater if it were one.

are absent. Passing that question, however, there is a more difficult one. The judge wrote that "[n]o obligation to a non-client such as Kirkland arises from such action [i.e., transmitting its client's position] other than the duty to refrain from relaying information that the lawyer knows or should know is untrue or misleading." Because Kirkland alleges that certain information was false as of the date of the letter and that the defendant James was careless in relaying it (i.e., that he knew or should have known of its falsity), it was error to dismiss for failure to state a claim.

Similarly, we think it at best premature to dismiss the negligent supervision, c. 93A, and partnership liability claims. Following discovery, summary judgment may lie as to some or all of the claims. However, it cannot now be said that no set of provable facts would entitle Kirkland to relief.

*Judgment reversed.*

BROWN, J. (concurring). I fully concur in the reasoning and result reached by the majority. See Matthew 6:24. I merely wish to point out the wasted effort expended on the part of both sides, particularly the moving party, in attempting to dispose of this case under Mass.R.Civ.P. 12(b) (6), 365 Mass. 755 (1974). All too often that course of action proves to be a huge exercise in futility, as was amply demonstrated here.

The lower court, as well as this court, would have been aided greatly if the parties had elevated this matter to another rung on the procedural ladder by filing affidavits and other appropriate materials to bring it within the more efficacious purview of a summary judgment proceeding. See Mass.R.Civ.P. 56, 365 Mass. 824 (1974).

To paraphrase my brother Justice Kass, whenever one has an opportunity "to drive a stake through the heart of a vampire" and kill it, one should surely do so. Unfortunately, rule 12(b) (6) is not even a blunt instrument and should seldom be the weapon of first choice. Rule 56 is the deadly one. See and compare *Balsavich* v. *Local Union 170, Intl. Bhd. of*

*Teamsters*, 371 Mass. 283, 288 (1976). See also *Romano* v. *Sacknoff*, 4 Mass. App. Ct. 862, 863 n.2 (1976).