UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-1559

ONE NATIONAL BANK,

Plaintiff - Appellant,

v.

JOSEPH M. ANTONELLIS,

Defendant - Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy J. Gertner, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Cyr, Circuit Judge, 

and Skinner,* Senior District Judge. 



Dale R. Harger, with whom Mountain, Dearborn & Whiting and 
Howard J. Potash were on brief for appellant. 
George A. Berman, with whom Cynthia C. Smith, Susan S. 
Riedel and Posternak, Blankstein & Lund were on brief for 
appellee.



April 3, 1996


 

* Of the District of Massachusetts, sitting by designation.

TORRUELLA, Chief Judge. In this legal malpractice TORRUELLA, Chief Judge. 

action, appellant-plaintiff One National Bank ("ONB" or "One

National") appeals the district court's entry of summary judgment

for appellee-defendant Joseph M. Antonellis ("Antonellis"). Two

principal issues are raised on appeal: first, whether a

nonclient can maintain an action against an attorney when that 

attorney negligently certifies to a mortgagee that the title is

good, and the mortgagee then assigns the title certificate,

mortgage, and all associated documents to the nonclient in good

faith; and second, whether the mortgagee's assignee can maintain

an action for negligent title certification pursuant to the

Massachusetts title certification statute, Mass. Gen. L. ch. 93,

70. For the reasons stated herein, we affirm.

BACKGROUND BACKGROUND

In late 1987, Milford Savings Bank ("Milford") lent

$100,000 to Thomas J. Milani and Thomas Chamberlin, individually

and as trustees of T & T Realty Trust, and to Jaqueline Wojnowski

and Cathy A. Milani, individually. A mortgage on property in

Bellingham, Massachusetts served as security (the "first Milani

mortgage"). A few months later, in April of 1988, Thomas J. and

Cathy A. Milani (together, the "Milanis") executed another

mortgage on the same property, also to Milford, to secure a

$150,000 loan (the "second Milani mortgage"). Milford was

represented in the 1988 transaction by appellee Antonellis, an

-2-

attorney.

Some months later, on August 10, 1988,1 Antonellis

issued a certification of title, which certified that the

mortgagors held title to the property "free from all

encumbrances, and the mortgagee [held] a good and sufficient

record first mortgage to the property."2 No mention was made of

the first Milani mortgage. The certification also included a

disclaimer, which stated: "THIS CERTIFICATE IS NOT TO BE USED

FOR TITLE INSURANCE PURPOSES WITHOUT THE EXPRESS WRITTEN

PERMISSION OF JOSEPH M. ANTONELLIS, ESQUIRE." While Antonellis

was preparing the title certificate, according to his deposition,

a Milford bank official called him around the time the second

Milani mortgage was executed. The official informed Antonellis

of the first Milani mortgage, and stated that it would be

subordinated to the April 1988 second Milani mortgage. However,

it appears that Milford never subordinated the mortgage.

In the meantime, ONB purchased a package of eighty-five

adjustable rate one-year first mortgages from Milford on August

2, 1988, including the second Milani mortgage. ONB did not hire

an attorney to check these mortgages' certifications of title.

 

1 The district court noted that Antonellis claimed that it took
several months to prepare the formal certificate because he was
too busy.

2 Antonellis' certification is made up of two documents: a form
entitled "Certification of Title," dated May 3, 1988, and a
second form entitled "Attorney's Certification of Title to
Mortgagee and Mortgagor[s]," dated August 10, 1988. The former
document was attached to the latter and incorporated by
reference.

-3-

Subsequently, Milford was declared insolvent in early July of

1990, and the Milanis defaulted on both their mortgages. The

Federal Deposit Insurance Corporation ("FDIC") took over Milford

and was appointed its receiver. The FDIC repudiated the

agreement between Milford and ONB.

Faced with this situation, One National sued

Antonellis, the FDIC, and the Milanis. The district court

granted summary judgment to defendants Antonellis and FDIC. One

National dismissed its action against the Milanis, and here

appeals the summary judgment only as to appellee Antonellis. 

DISCUSSION DISCUSSION

After reciting the standard of review, we address each

issue in turn.

A. Standard of Review A. Standard of Review 

This court reviews a district court's grant of summary

judgment de novo. See, e.g., Rhode Island Depositors Economic 

Protection Corp. v. Hayes, 64 F.3d 22, 25 (1st Cir. 1995). "When 

presented with a motion for summary judgment, courts should

'pierce the boilerplate of the pleadings and assay the parties'

proof in order to determine whether trial is actually required.'"

Rivera-Cotto v. Rivera, 38 F.3d 611, 613 (1st Cir. 1994) (quoting 

Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st 

Cir. 1992), cert. denied, 507 U.S. 1030 (1993)). Summary 

judgment is therefore appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to

-4-

any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is

material if it "carries with it the potential to affect the

outcome of the suit under the applicable law." Nereida-Gonz lez 

v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). We review 

the record in the light most favorable to the nonmovant,

indulging all reasonable inferences in that party's favor. See, 

e.g., Flanders & Medeiros, Inc. v. Bogosian, 65 F.3d 198, 201 

(1st Cir. 1995); Rhode Island Depositors Economic Protection 

Corp., 64 F.3d at 25. Here, because the parties do not dispute 

any facts that could affect the suit's outcome, our analysis

confines itself to whether Antonellis is entitled to judgment as

a matter of law.

B. Applicable Law B. Applicable Law 

Both parties share the view that Massachusetts law

applies. Accordingly, we will apply that state's law, since

"[w]here the parties agree what substantive law controls in a

diversity case, we can -- and ordinarily should -- accept such a

concession." Moores v. Greenberg, 834 F.2d 1105, 1107 n.2 (1st 

Cir. 1987); see Sheinkopf v. Stone, 927 F.2d 1259, 1264 (1st Cir. 

1991) (accepting the parties' contention that Massachusetts law

applied to allegation of implied attorney-client relationship).

C. The Negligence Claim C. The Negligence Claim 

One National claims Antonellis is liable to it for his

failure to record the first Milani mortgage on the title

certificate. See Republic Oil Corp. v. Danziger, 400 N.E.2d 

-5-

1315, 1317 (Mass. App. Ct. 1980) (finding attorney negligent for

failure to disclose the existence of a perfected security

interest in a certification of title). Because there was no

attorney-client relationship between the parties, any duty

Antonellis owed ONB must be based on Massachusetts' theory of

foreseeable reliance, which states that a lawyer may be liable to

a non-client.3 As discussed below, we find that Antonellis did

not owe One National a duty of care under the foreseeable

reliance exception. Therefore, we will not address the parties'

dispute as to whether Antonellis was in fact negligent. See, 

e.g., Lamare v. Brisbanes, 636 N.E.2d 218, 219-20 (Mass. 1994) 

(affirming summary judgment in favor of attorney where attorney

had no duty to third party nonclient); Logotheti v. Gordon, 607 

N.E.2d 1015, 1018 (Mass. 1993) (finding that negligence claim

failed where attorney had no duty of care to third party

nonclient).

1. The Foreseeable Reliance Exception 1. The Foreseeable Reliance Exception 

In order to sustain a claim of legal malpractice, ONB

must show that Antonellis owed One National a duty of care. See 

Spinner v. Nutt, 631 N.E.2d 542, 544 (Mass. 1994); DaRoza v. 

Arter, 622 N.E.2d 604, 608 (Mass. 1993). The issue of whether 

such a duty exists is a question of law. Id. at 381. The 
 

3 The parties do not argue on appeal that there was either an
express or implied attorney-client relationship. See Sheinkopf, 
927 F.2d at 1265-66; Falherty v. Baybank Merrimack Valley, N.A., 
808 F. Supp. 55, 60 (D. Mass. 1992); DeVaux v. American Home Ins. 
Co., 444 N.E.2d 355, 357 (Mass. 1983). Accordingly, we focus 
solely on whether Antonellis' liability extends to ONB under
Massachusetts' theory of liabilitybased on foreseeable reliance. 

-6-

general rule is that "an attorney's liability for negligence

arises out of a duty owed to a client." Norman v. Brown, Todd & 

Heyburn, 693 F. Supp. 1259, 1265 (D. Mass. 1988). Massachusetts 

case law has crafted an exception to this general proposition

based on foreseeable reliance, however, so that "an attorney is

not 'absolutely insulated from liability to nonclients.'"

Spinner, 631 N.E.2d at 544 (quoting Page v. Frazier, 445 N.E.2d 

148, 154 (Mass. 1983)).

As defined in the case law, the foreseeable reliance

exception demands that two requirements be met. First, a duty is

only owed to nonclients "who the attorney knows will rely on the

services rendered." Robertson v. Gaston Snow & Ely Bartlett, 536 

N.E.2d 334, 350 (Mass.), cert. denied, 493 U.S. 894 (1989); see 

Spinner, 631 N.E.2d at 544; DaRoza, 622 N.E.2d at 608. It is not 

enough that a plaintiff claims actual reliance: "[i]t must be

shown that the attorney should reasonably foresee that the

nonclient will rely upon him for legal services." Id. at 608 

n.7. Second, "the court will not impose a duty of reasonable

care on an attorney if such an independent duty would potentially

conflict with the duty the attorney owes to his or her client."

Lamare, 636 N.E.2d at 219; see Robertson, 536 N.E.2d at 350; 

Kirkland Constr. Co. v. James, 658 N.E.2d 699, 701 (Mass. App. 

Ct. 1995). Here, the district court found there was "some

question" as to the first, foreseeable reliance prong of the

test, but that there was "no question" that there were

potentially conflicting duties. (District Court Memorandum and

-7-

Decision, p. 15). Reviewing the issue de novo, we agree with the 

court below that there was a potential conflict between

Antonellis' duty to Milford and his alleged duty to One National,

so that ONB cannot meet the test's second requirement.

Accordingly, we need not determine whether Antonellis should

reasonably have foreseen ONB's reliance on the title certificate.

2. Potential Conflict 2. Potential Conflict 

The conflict requirement of the reasonably foreseeable

test does not demand that an actual conflict arise. Rather,

Massachusetts and federal case law has consistently found that a

potential conflict between an attorney's duty to his or her

client and the alleged duty to the nonclient is sufficient to

defeat the nonclient's malpractice claim. "[I]t is the potential

for conflict that prevents the imposition of a duty . . . ."

Spinner, 631 N.E.2d at 545; see Schlecht v. Smith, No. 92-30099- 

MAP, 1994 WL 621594 at * 5 (D. Mass. 1994); Page, 445 N.E.2d at 

153; see, e.g., DaRoza, 622 N.E.2d at 608 (employee's interest in 

worker's compensation suit could have differed from client

insurer's). Thus, any potential conflicts between Antonellis'

duty to Milford and his alleged duty to ONB will defeat One

National's claim.

Before addressing the potential conflicts, we note that

the facts in the present case differ in several material ways

from the Massachusetts cases we have found that address the

foreseeable reliance exception. In those cases, only one

transaction is generally at issue, the potential third party

-8-

nonclient's identity is known from the start of the transaction,

and often, the nonclient and client are in an adversary position.

See, e.g., Page, 445 N.E.2d at 149-50; Kirkland, 658 N.E.2d at 

699-700. Here, there were two independent transactions: the

certificate of title prepared for the first transaction -- the

second Milani mortgage -- was relied on in the second -- the

sale of that mortgage. Also, the third party nonclient's

identity was not known until after the legal service was

rendered, and the nonclient is attempting to stand in the shoes

of the client as mortgagor in the first transaction, not in its

adverse position as buyer in the second. In short, we find

ourselves facing the dilemma of having to apply the fact-

dependant Massachusetts foreseeable reliance test to factors that

have not yet come before the state courts.

One National argues that in this context there was no

conflict between Antonellis' duty to Milford and the duty he

allegedly owed ONB. It asserts that the duty on which it rests

its claim is the same duty Antonellis owed Milford: the duty to

search properly and to report accurately the state of the title

with respect to the 1988 mortgage. It argues that two duties

cannot be in conflict with each other if they are identical.

Unlike in Page, ONB argues, where the attorney faced a potential 

conflict between duties to the mortgagee client and mortgagor

nonclient because they may have had different concerns about the

state of the title, Page, 445 N.E.2d at 153, both ONB and Milford 

simply wanted an accurate certificate of title. That is true, as

-9-

far as it goes.

However, One National misconstrues the scope of the

duty to the client that Massachusetts courts have focused on.

"[A]n isolated instance identity of interests" between ONB and

Milford does not suffice to impose duty on Antonellis. Spinner, 

631 N.E.2d at 545. "Although the particular activity in question

may not be adverse, and may actually be beneficial, the

appropriate inquiry concerns the purpose of the entire legal

representation." 1 Ronald E. Mallen & Jeffrey M. Smith, Legal

Malpractice 7.11, at 387 (3d ed. 1989). Antonellis owed

Milford not only an obligation to report on the title, but also a

concurrent duty of confidentiality. The Massachusetts and

federal courts that have applied the foreseeable reliance

exception have repeatedly drawn on the importance of the duty of

confidentiality in finding the potential for a conflict, so that

"an attorney's duty to third parties is circumscribed and limited

by the law and the disciplinary rules governing attorney

conduct." Schlecht, 1994 WL 621594 at * 5; see, e.g., Austin v. 

Bradley, Barry & Tarlow, P.C., 836 F. Supp. 36, 38 (D. Mass. 

1993); Logotheti, 607 N.E.2d at 1018; Spinner, 631 N.E.2d at 545; 

see also Mallen & Smith, supra, at 7.11 at 388 ("The policy 

considerations against implying a duty are strongest where doing

so would detract from the attorney's ethical obligations to the

client.").

In Logotheti and Spinner the Supreme Judicial Court 

framed the attorney's duty of confidentiality in terms of the

-10-

Massachusetts disciplinary rules' requirement "that an attorney

preserve the secrets and confidences gained in the course of

representing a client." Spinner, 631 N.E.2d at 545; see S.J.C. 

Rule 3:07, Canon 4, DR 4-101 ("Preservation of Confidences and

Secrets of a Client"); S.J.C. Rule 3:07, Canon 7, DR 7-101

("Representing a Client Zealously"); see also Schlecht, 1994 WL 

621594 at * 5 ("To impose on a borrower/mortgagor's attorney a

duty to the lender/mortgagee can create situations antithetical

to the disciplinary rules which govern attorney conduct.");

Logotheti, 607 N.E.2d at 1018; Harris v. Magri, 656 N.E.2d 585, 

586 n.4 (Mass. App. Ct. 1995). Other cases posit the obligation

of confidentiality in more general terms. See Austin, 836 F. 

Supp. at 38 (citing to attorney's "concurrent obligation of

confidentiality" to his client).

Here, contrary to ONB's claim, there is a clear

potential conflict rooted in Antonellis' duty of confidentiality.

Milford knew that there was a first mortgage that had not been

reported. Given this, if we place a duty to ONB on Antonellis'

shoulders, we put on him the obligation to inform it of his

error. That mistake was made in the first transaction, a

transaction to which One National was not a party. Antonellis'

purported duty to ONB therefore arose only in the second

transaction, where that bank actually was a party. Cf. 

Hendrickson v. Sears, 310 N.E.2d 131, 135-36 (Mass. 1974) 

(holding that cause of action for negligent certification of

title accrues upon discovery). Ostensibly, having already

-11-

produced the certificate, his duty would be to check whether

Milford subordinated the debt, remind it of his error, and if

Milford did not rectify it, to do so himself by informing ONB.

Clearly, at that point a conflict in the duty of confidentiality

would arise: if his client decided not to pass on the

information and Antonellis did so in its stead, he would breach

his duty of confidentiality. See S.J.C. Rule 3:07, Canon 4, DR 

4-101(B) (stating that "a lawyer shall not knowingly . . .

[r]eveal a confidence or secret of his client."). If he did not

pass on the information, he would breach his duty to ONB. We

refuse to place him in that position. Therefore, we find that

the potential for conflicts in Antonellis' duty to Milford and to

ONB bars liability in this case.4 Cf. Austin, 836 F. Supp. at 

 

4 The court below relied on a different basis in finding that
there was a clear potential for conflict in this case. It found
that ONB and Milford were in the adverse positions of buyer and
seller in August 1988. Since the courts have found that reliance
on an adverse party's legal counsel in a business transaction is
unreasonable as a matter of law, see Schlecht, 1994 WL 621594 at 
* 7; Robertson, 536 N.E.2d at 350 n.6; Page, 445 N.E.2d at 154- 
55, the court found that there was a potential for conflict. It
found that Antonellis would be under different pressures if he
were representing both Milford and ONB than if he represented ONB
alone. The court also commented on One National's failure to use
its own counsel in the sales transaction.

One National contests that Antonellis was not representing a
party adverse to it, because he did not represent Milford in the
ONB-Milford sales transaction, but only in the second Milani
mortgage. When he rendered the title certificate at issue,
Milford and ONB were not yet adverse parties.

Because we find that One National fails the potential
conflicts prong of the foreseeable reliance exception on other
grounds, we do not address here whether the district court was
correct in finding that ONB sought to rely on the legal counsel
of an adverse party.

-12-

38 (refusing to infer a duty to disclose a client's insolvency to

nonclient investors where duty would directly conflict with

concurrent obligation of confidentiality to client).

ONB contests that potential conflicts would only arise

if Antonellis had represented Milford as the seller of the

mortgages in the second transaction, and if Milford and

Antonellis had intended to deceive ONB. We disagree. Neither of

these additional facts are necessary for potential conflicts to

arise. First, ONB is relying on the work Antonellis did for the

first transaction -- whether we consider ONB as Milford's

replacement in the first transaction or as a party adverse to

Milford in the second is irrelevant to this analysis. Second, as

the district court noted, there is no allegation that Milford and

Antonellis colluded to deceive ONB. There are many reasons why

Milford could fail to inform ONB of the faulty title. Indeed,

even if it did tell ONB about the problem, Antonellis could still

face a conflict in his duty of confidentiality if Milford made

any misrepresentations about the circumstances under which the

error was made, i.e. that it too knew of the omission of the 

first Milani mortgage. Thus we do not accept ONB's contention

that there was no potential conflict.

3. Kirkland Construction Co. v. James 3. Kirkland Construction Co. v. James 

One National points to Kirkland Construction Co. v. 

James, 658 N.E.2d 699 (Mass. App. Ct. 1995), the Appeals Court of 

Massachusetts' most recent decision addressing the foreseeable

reliance exception to the no duty rule, as support for its

-13-

position. There, the court faced a challenge to a lower court's

grant of a 12(b)(6) motion under the Massachusetts Rules of Civil

Procedure. Kirkland, a contractor, was asked to renovate a

retail space for an office supply firm. He sought and received a

letter from the firm's attorney, defendant James, assuring that

his client could pay for the work. However, after Kirkland had

performed under the contract, the office supply firm failed to

pay. Kirkland sued James and the partners of his law firm for

negligence, and the lower court granted the defendants' 12(b)(6)

motion. Id. at 699-700. The court reversed, finding that 

Kirkland was entitled to seek relief from the attorneys under a

theory of foreseeable reliance. Id. at 701. 

An examination of the factors the court weighed in

Kirkland in comparison with the facts of the instant case reveals 

that the circumstances here are sufficiently different from those

in Kirkland that we should affirm the court below. In its 

analysis, the Kirkland Court focused on who was intended to 

benefit from the letter: "an independent duty will be more

readily found where, as here, the service is intended to benefit

the client as well as the third party." Id. (citing the 

Restatement (Second) of Torts 552(2)(a) (1977)). Examining the

letter, which was addressed to Kirkland, the court noted that it

contained unqualified representations and that the typical

hedging phrases were absent. Id. at 702; cf. Jurgens v. Abraham, 

616 F. Supp. 1381, 1386 (D. Mass. 1985) (holding that nonclient

stated a claim where attorney told him he attached a sum of money

-14-

for nonclient's benefit). That is not true here: the

certificate of title was not addressed to ONB, the

representations were made in boilerplate language with standard

exceptions listed, and there was an express disclaimer, in

capital letters, on one of the two pages.

The Kirkland court also listed a series of allegations 

in the plaintiff's complaint that, if proven, would be "the stuff

of liability." 658 N.E.2d at 701. First, both Kirkland and ONB

allege that the representations were false. The fact that both

plaintiffs make the same allegation, however, is somewhat of a

red herring, because if there were no false representations,

there would be no basis for suit. Second, Kirkland alleged that

the letter stated that the office supply firm had made

arrangements to ensure payment, and that the attorneys'

"objective was to induce Kirkland to enter into a contract." Id. 

We cannot say that Antonellis' objective was to induce ONB into a

contract, since ONB was not a party to the transaction for which

the certificate of title was performed.5 Third, the Kirkland 

complaint maintained that the attorneys "knew and intended that

Kirkland would rely on the representations," and that the

reliance was reasonable. Id. Again, ONB was not a party. Even 

if we infer that Antonellis should have suspected that the

 

5 Nor can ONB argue that the purpose of Antonellis' work was to
induce the Milanis into the mortgage, because by law it is
unreasonable for a mortgagee to rely on mortgagor's counsel, as
mortgagee and mortgagor are adverse parties. See Schlecht, 1994 
WL 621594 at * 5; Lamare, 636 N.E.2d at 218; Beecy v. 
Pucciarelli, 441 N.E.2d 1035, 1040 (Mass. 1982). 

-15-

mortgage would be sold, however, the ties between the attorney

and nonclient here are nowhere near as close as those in

Kirkland, where the letter at issue was addressed to the 

plaintiff nonclient and expressly addressed its concerns.

Finally, Kirkland alleged that it was seeking information, not

legal advice, from the lawyers about their client. Id. Whether 

Antonellis' certificate of title is a legal opinion proves

irrelevant, however, since the Kirkland court also stated that 

"the likelihood of liability would not be greater" if the letter

were an opinion letter. Id. at 702 n.7. 

In the light of the potential conflict between

Antonellis' duty to his client and his alleged duty to One

National, and the differences between the factors that led to the

court's reversal in Kirkland and the facts of the instant case, 

we find upon de novo review that as a matter of law One 

National's legal malpractice claim fails the foreseeable reliance

test. As a consequence, we need not determine whether ONB can

meet the foreseeability requirement. See DaRoza, 622 N.E.2d at 

609.

D. Assignability of Certificate of Title D. Assignability of Certificate of Title 

One National contends that it acquired the right to

proceed against Antonellis through assignment of the

certificate.6 Specifically, it states that because Milford
 

6 In fact, it proves difficult to determine the intended scope
of ONB's assignment argument. Before the court below, it
contended that as assignee of the mortgage it "had all the rights
of Milford Savings Bank once the mortgage was assigned and duly
recorded . . . which would include all rights against the

-16-

entered into a contract with Antonellis for the issuance of the

title certificate and then assigned the fruits of the contract to

ONB, ONB has the right to proceed against Antonellis. The crux

of the issue, it claims, is whether the certificate was

transferrable by Milford to ONB. Essentially, ONB asks that we

allow it to step into Milford's shoes as a client merely because

it was assigned the certificate that was the product of the

attorney-client relationship. Noting that the disclaimer barred

reliance by a title insurer, not assignment, it argues that

although the transferability of a certificate of title has

apparently not been addressed by the Massachusetts courts, they

would hold the assignment valid. ONB makes its argument by

analogy to the law's general favor towards assignability of

contracts and contract rights, and the fact that Massachusetts

allows assignments of many types of claims, including contract

damages. See Mass. Gen. L. ch. 106 2-210(2). It also makes an 

analogy to other jurisdictions' acceptance of assignments of
 

certifying attorney Antonellis." (Appdx. at 50). It did not
specify which rights it referred to. In its brief to this court,
ONB argued that the "gist" of the tort of legal malpractice is
the lawyer's breach of contract, and that ONB acquired a legal
malpractice claim with the certificate, stating that "if
Milford's assignment to ONB is treated as an assignment of a
malpractice claim, the Supreme Judicial Court would hold the
assignment valid." (Brief of Appellant at 27). Of course, since
ONB did not raise below a claim that a legal malpractice claim
was assigned, they cannot do so here. See Ondine Shipping Corp. 
v. United States, 24 F.3d 353, 355 (1st Cir. 1994); Clauson v. 
Smith, 823 F.2d 660, 666 (1st Cir. 1987) (collecting cases). 
However, in its reply brief ONB states that it was not arguing
that the action involved an assignment of a malpractice claim,
but rather the "real issue" was whether the certificate was
transferable. Since we deem that this "real issue" was included
within the scope of its argument below, we address their claim.

-17-

legal malpractice claims. See, e.g., Oppel v. Empire Mutual Ins. 

Co., 517 F. Supp. 1305, 1306-07 (S.D.N.Y. 1981); Thurston v. 

Continential Casualty Co., 567 A.2d 922, 923 (Me. 1989). 

One National recognizes that others might object to

selling the product of legal services as inconsistent with the

personal and fiduciary character of the attorney-client

relationship. See Dunne v. Cunningham, 125 N.E. 560, 561 (Mass. 

1920) (commenting on the "highly fiduciary" relationship between

attorney and client). Without citing any direct authority in its

support, ONB contends that the assignment illustrates the

"inherently weak nature" of the relationship where the attorney

merely plays a standardized role of reporting the state of the

public records. See Fall River Savings Bank v. Callahan, 463 

N.E.2d 555, 561 (Mass. App. Ct. 1984) (noting the standardized

nature of passing on a title); 1 Mallen & Smith, supra, at 25.8 

(setting out the process and describing potential liabilities).

Thus, since the purpose of the relationship is not to give advice

or counselling but to produce a formal certificate, ONB

maintains, the transfer would not jeopardize any public policy

favoring the attorney-client relationship.

The district court addressed ONB's assignment

contention within the context of its discussion of Mass. Gen. L.

ch. 93, 70. It rejected One National's position that an

assignee should have the same fiduciary relationship with the

assignor's attorney as the assignor, the original mortgagee,

enjoyed, on two bases. We address the first, which draws on the

-18-

language of section 70, in our discussion of that section, infra. 

The district court's second basis for rejecting ONB's position

was that ONB's argument does not arise out of the common law

governing the unique attorney-client relationship -- a personal

relationship, voluntarily assumed, which is governed by

disciplinary rules. Under de novo review, we also find that the 

attorney-client relationship between Antonellis and Milford plays

a crucial role in determining whether the certificate was

transferable.

Massachusetts case law offers little specific guidance

on this issue, but we find that an analysis of their treatment of

the attorney-client relationship in the context of claims for

negligent certification of title proves illustrative. First, as

was noted above, the nature of the attorney-client relationship,

including the obligation of confidentiality and application of

the disciplinary rules, has consistently been cited by the

Massachusetts courts within this context. See, e.g., Spinner, 

631 N.E.2d at 545. This indicates that the courts do not see the

attorney-client relationship in this context as inherently weak,

as ONB suggests. Significantly, in Hendrickson v. Sears, which 

involved a suit by the purchasers of real estate against the

attorney they hired for the title search, the Court noted the

differences between legal and medical malpractice actions in its

analysis, 310 N.E.2d at 134, and commented that

[t]he client is not an expert; he cannot
be expected to recognize professional
negligence if he sees it, and he should
not be expected to watch over the

-19-

professional or to retain a second
professional to do so. The relation of
attorney and client is highly fiduciary
in its nature.

Id. at 135. Nowhere does the Court's language suggest that the 

fiduciary relationship of an attorney and client is diminished

because the services the attorney rendered were highly

standardized. Similarly, in Schlecht v. Smith, the district 

court addressed the attorney's failure to record the mortgage, at

his client's request, within the context of the disciplinary

rules. Schlecht, 1994 WL 621594 at * 5. Again, nothing suggests 

that the rules' force is somehow diminished.

Second, in Fall River Savings Bank v. Callahan, the 

Appeals Court of Massachusetts noted the standardized nature of

title searches. 463 N.E.2d at 561 ("There may be no definite

rules which prescribe a right or wrong way to conduct a

deposition but certain rules have evolved for passing on a

title."). The court found that fact significant in deciding that

a court may use commentaries to establish the standard of care in

the land conveyance context, since that is an area of law

practice "which lends itself particularly to formulation through

decisional law and commentary as to what are appropriate

procedures." Id. But even as it recognized the standardization 

of this area, the Court treated the attorney-client relationship

as it would in any other context, as carrying with it all the

attendant duties and responsibilities. Id. 

This approach makes intuitive sense. Even though the

practices for searching title are standardized, the disciplinary

-20-

rules apply as they would in any attorney-client relationship,

and the attorney is subject to liability for malpractice. The

duties attendant to the fiduciary relationship between the

attorney and client are in full force. See Dunne, 125 N.E. at 

561 (noting that the principles relating to an attorney's

fiduciary duties "are recognized as binding in all their

amplitude."). Thus the unspecified public policy concerns that

ONB tells us would not be jeopardized -- presumably, protecting

the attorney's ability to function effectively, client

confidentiality, the integrity of the bench and bar, and the

ethical administration of justice, see Berman v. Coakley, 137 

N.E. 667, 670-71 (Mass. 1923) ("Public policy hardly can touch

matters of more general concern than the maintenance of an

untarnished standard of conduct by the attorney at law toward his

client."); 1 Mallen & Smith, supra, at 11.5, 11.12, 12.4, 13.2 

-- are still implicated.

In sum, since the case law clearly indicates that the

Massachusetts courts do not consider the fiduciary nature of the

attorney-client relationship to be attenuated in this certificate

of title context, and in the absence of further guidance from the

Massachusetts courts, we refuse to allow a third party, of whom

the attorney does not know, to assume the rights of a client

through assignment. We therefore find that One National did not

acquire the right to proceed against Antonellis through

assignment of the certificate of title.

E. General Law Chapter 93, Section 70 E. General Law Chapter 93, Section 70 

-21-

One National's final argument is that Antonellis is

liable under Mass. Gen. L. ch. 93, 70. Under that section, an

attorney rendering a certificate of title for a mortgagee may be

subject to liability to the mortgagor as well:

The liability of any attorney
rendering such certification shall be
limited to the amount of the
consideration shown on the deed with
respect to the mortgagor, and shall be
limited to the original principal amount
secured by the mortgage with respect to
the mortgagee. Said certification shall
be effective for the benefit of the
mortgagor so long as said mortgagor has
title to the mortgaged premises, and
shall be effective for the benefit of the
mortgagee so long as the original debt
secured by the mortgage remains unpaid.

Mass. Gen. L. ch. 93, 70. The loan or credit secured by the

purchase money first mortgage must be on real estate with between

one and four dwellings, to be occupied by the mortgagor. Id. 

ONB argues that because it holds the mortgage it falls

within the scope of "mortgagee" as used in section 70, and that

Antonellis is thus liable to it. Noting that section 70 operates

in a manner analogous to a statute of limitations in that it

provides that the title certification will remain in effect so

long as the original debt is unpaid, ONB argues it would be

unreasonable to argue that the attorney's liability disappears

when a mortgage is sold, no matter whether or not the original

debt is unpaid. Further, ONB notes that the sale of a mortgage

neither enlarges the attorney's liability, as it is limited by

the statute, nor changes the nature of the liability. As ONB

states, one bank is simply substituted for another: all else

-22-

remains constant. Thus the attorney remains liable on the

certificate until the mortgage debt is paid.

Upon de novo review, we agree with the district court 

that, while One National's argument makes intuitive sense, it

eventually fails. First, like the court below, we find that the

plain language of the statute does not support ONB's position.

It is a basic tenet of statutory interpretation that where the

plain language of a statute is clear, it governs. See United 

States v. Rutherford, 442 U.S. 544, 551 (1979) ("If a legislative 

purpose is expressed in 'plain and unambiguous language, . . .

the . . . duty of the courts is to give it effect according to

its terms'" (quoting United States v. Lexington Mill & Elevator 

Co., 232 U.S. 399, 409 (1914)). ONB correctly points out that 

here, the statute's text does not state that the attorney's

liability to the mortgagee terminates when the mortgage is

transferred. However, we refuse to read the opposite inference -

- that the liability is not extinguished upon transferral -- into

the statute when it is not warranted by the plain language of the

text. The language of section 70 focuses on mortgagees, not, as

One National would have us believe, on their assignees. See 

Falmouth Ob/Gyn Assoc. Inc. v. Abisla, 629 N.E.2d 291, 293 (Mass. 

1994), ("A term employed in a statute should be afforded its

customary meaning, taking into account the legislation's purpose

and history."); Page, 445 N.E.2d at 152 (refusing to extend 

70's application to mortgagors purchasing unimproved land in

the absence of suggestions or implications in the clear language

-23-

of the statute).

"Exceptions to clearly delineated statutes will be

implied only where essential to prevent 'absurd results' or

consequences obviously at variance with the policy of the

enactment as a whole." Rutherford, 442 U.S. at 552. Clearly, no 

such exception arises here. Constraining the application of

section 70 to mortgagees' assignees does not create "absurd

results." As the court below noted, Chapter 93 as a whole

addresses "the regulation of trade and enterprises in order to

prevent unfair practices against consumers." (District Court

Memorandum and Decision, p. 8). Our reading of the statute is

not "obviously at variance" with that policy, even if this

reading does not extend the policy to assignees of mortgagees.

Second, like the court in Page, we note that the 

legislature, in its amendments to section 70, has not expanded

the class of mortgagors it protects to encompass assignees. See 

Page, 445 N.E.2d at 152. As the district court stated, had the 

legislature desired to extend the provisions of section 70, it

could have done so. Instead, only purchase money first

mortgages, of dwellings of up to four families, occupied by the

mortgagor, fall within the section. Clearly, the legislature did

not intend for section 70 to provide that a commercial bank,

which neither paid for the attorney's services nor had any

contact with the attorney, be entitled to the protection of the

section merely because it was assigned the mortgage. In the face

of the plain language of the statute, and in the absence of

-24-

legislative action to the contrary, we reject One National's

argument that Antonellis is liable to it under section 70.

CONCLUSION CONCLUSION

In this case, as in all cases involving an allegation

that an attorney failed in a duty to a nonclient, there is a

tension between two concerns. On one hand, we do not want to

extend liability so widely that an attorney faces "'liability in

an indeterminate amount for an indeterminate time to an

indeterminate class.'" Craig v. Everett M. Brooks Co., 222 

N.E.2d 752, 755 (Mass. 1967) (quoting Ultramares Corp. v. Touche, 

Niven & Co., 174 N.E. 441, 444 (1931)). On the other hand, we do 

not want to reward an attorney's carelessness. See Spinner, 631 

N.E.2d at 545 (noting policy considerations against sheltering

attorney's negligence from suit in will-drafting context). In

finding that Antonellis' liability does not extend to One

National, we are cognizant that on the surface we seem to be

protecting him from suit for his negligence. However, we note

that ordinarily, ONB would have recourse against Milford for the

faulty title, and Milford in turn could bring a negligence claim

against Antonellis, as its lawyer. See id. (noting that trust 

beneficiaries could sue the trustees, and the trustees in turn

could bring an action against their attorneys, but beneficiaries

could not directly sue trustees' attorneys). Because Milford

failed, ONB has lost that option. ONB, essentially, took a risk

in deciding not to get its own title insurance for the

transaction. It was a calculated risk, and it required a

-25-

complicated chain of events -- Antonellis' negligence, the

Milanis' default, Milford's failure, and the FDIC's repudiation

of the claim -- to make that risk fail to pay off. We refuse to

spot ONB's choice to take that risk with the safety net of a

negligence claim against Antonellis. Cf. Page, 445 N.E.2d at 

154-55 ("Where, as here, a nonclient takes the chance that the

client's interests are in harmony with his own, and does so in

the face of an express warning that the interests may differ, his

claim of foreseeable reliance cannot be rescued simply because,

in retrospect, the interests are shown not to have differed.").

For the foregoing reasons, the order of the district

court granting summary judgment in favor of Antonellis is

affirmed. affirmed. 

-26-