NATHAN EIGERMAN *vs.* PUTNAM INVESTMENTS, INC.,
& another.[1]

No. 05-P-574.

Suffolk. March 9, 2006. - May 2, 2006.

Present: ARMSTRONG, C.J., DREBEN, & VUONO, JJ.

Further appellate review granted, 447 Mass. 1110 (2006).

*Contract,* Employment, Performance and breach. *Practice, Civil,* Complaint,
Motion to dismiss.

In a civil action alleging that the defendant employer had breached the equity
participation terms of the plaintiff's employment contract, the judge erred
in dismissing the complaint for failure to state a claim upon which relief
could be granted, where the complaint, indulgently read, stated a claim on
the ground that a memorandum from the chief executive officer of the
employer restricted the plaintiff's right to tender shares of stock for
redemption by the employer; and where the complaint alleged facts
constituting a claim for breach of the implied covenant of good faith and
fair dealing. [225-227]

CIVIL ACTION commenced in the Superior Court Department on
June 3, 2004.

A motion to dismiss was heard by *Patrick F. Brady,* J.

*Joel Z. Eigerman* for the plaintiff.

*Jonathan M. Albano* for the defendants.

VUONO, J. The plaintiff, Nathan Eigerman, a former employee
of Putnam Investments, Inc., and Putnam Investment Manage-
ment, LLC (collectively, Putnam), filed a one-count complaint
for breach of contract in the Superior Court against Putnam
seeking declaratory relief and monetary damages.[2] Eigerman

---

[1]Putnam Investment Management, LLC.

[2]Eigerman purports to act on behalf of a class of Putnam employees and
seeks to certify a plaintiff class consisting of all Putnam employees who are
or were participants in the "Equity Partnership Plan" and were owners of
vested shares of Putnam's Class B common stock at any time after January
28, 2002. To date, the class has not been certified.

claims that Putnam breached the equity participation terms of his employment contract, the Equity Partnership Plan (hereafter the Plan) by intimidating him in order to prevent him from tendering his shares of stock in Putnam in accordance with the terms of the Plan. A judge of the Superior Court granted Putnam's motion to dismiss the complaint pursuant to Mass.R. Civ.P. 12(b)(6), 365 Mass. 755 (1974), on the ground that Putnam's alleged offensive conduct could not constitute a breach of contract because the terms of the Plan stated that Putnam was not obligated to repurchase the stock. Eigerman appeals from the dismissal of his complaint. We conclude that Eigerman's complaint, indulgently read, see *Federico* v. *Brockton Credit Union*, 39 Mass. App. Ct. 57, 61 (1995), citing *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), states a claim for breach of contract. Accordingly, we reverse the judgment of dismissal.

The lenient standard by which a complaint is measured on a motion to dismiss for failure to state a claim is familiar. "[T]he allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47 (1998), quoting from *Blank* v. *Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 407 (1995). Doubts are resolved in favor of the complainant, and the motion must be denied unless it is certain that no set of provable facts could entitle the plaintiff to relief. *Warner-Lambert Co.* v. *Execuquest Corp.*, *supra*. From this perspective, we summarize the facts alleged.[3]

The complaint alleges that Eigerman was employed by Putnam,[4] participated in the Plan, and received Putnam's restricted Class B common stock pursuant to the Plan. Under the Plan, Eigerman had the option, during certain defined "window periods," to tender to Putnam his restricted Class B common

---

[3]We derive the facts herein from the complaint and the exhibits attached thereto: the Plan; a memorandum to Eigerman from Lawrence J. Lasser, dated January 28, 2002; and a graph depicting the value of the Plan's share price and dividends. See *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 (2000); *285 Lynn Shore Drive Condominium Trust* v. *Automatic Sprinkler Bd.*, 47 Mass. App. Ct. 437, 440, 441 (1999). As the motion judge declined to review materials outside the pleadings, we likewise employ the standard of review "applicable to motions to dismiss and not summary judgment." *Murphy* v. *Cruz*, 52 Mass. App. Ct. 314, 318 n.5 (2001).

[4]The complaint further alleges that Putnam is a closely held corporation.

stock, which Putnam could then purchase at a price set by formula. The Plan stated, however, that Putnam had "no obligation to purchase such Class B Shares."

In early 2002, Putnam management became concerned about the number of employees tendering shares to the company. On or about January 28, 2002, Putnam's chairman and chief executive officer, Lawrence J. Lasser, issued a memorandum (hereafter the Lasser memo) stating, inter alia:

> "In . . . 1997, when the . . . Plan . . . was introduced, I wrote that we had created the Plan because: 'Putnam's goal has been to . . . mix long-term motivation and rewards with *short-term awards*' [(emphasis supplied)]. . . .
>
> "[O]ne aspect of the [P]lan continues to prompt questions, the sale by [P]lan participants of vested Putnam Class B shares. . . .
>
> "I prefer we not establish a fixed policy [concerning participants' sales of Class B shares] . . . . Thus the informal policy is to encourage recipients to hold Putnam equity, also recognizing it may sometimes become necessary to sell a portion of equity to meet personal needs. One example might involve taxes. . . . A sale of this type is acceptable and will not be questioned. We ask that prior to selling any Putnam equity during a window period for reasons other than meeting tax obligations, you discuss the reasons behind such a sale with your Operating Head. I have asked T. Hoffman to track sales of equity to allow us to develop a better understanding of why people reduce or divest their Putnam equity holdings, given the now better clarified view that Putnam equity is awarded as a *long-term incentive* vehicle" (emphasis original).

Eigerman alleges that the Lasser memo was a thinly veiled threat that Plan participants, such as Eigerman, would suffer adverse employment consequences if they tendered Class B shares to Putnam for reasons other than acceptable "personal need."[5] As a result, Eigerman refrained from tendering his shares during the "windows" of spring and fall, 2002. He did

---

[5]As drafted, § 8(b)(i) of the Plan, governing participants' tender of shares

not sell his shares to Putnam until he left Putnam's employ in 2003, at which time he realized about fifty-eight percent of the gain he could have had if he had sold his shares to Putnam during the 2002 window periods.

We review the motion judge's allowance of Putnam's motion to dismiss under rule 12(b)(6) de novo. See, e.g., *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. at 47-50. On the facts alleged, Eigerman has stated a claim for which relief may be granted on the ground that the Lasser memo restricted his right to tender shares for redemption by Putnam. Contrary to the motion judge's assumption, Putnam's assertion that it is not obligated to repurchase shares is not relevant to the issue whether Eigerman has alleged a breach of his right to tender. On a fuller record, evidence may indicate that Putnam consistently redeemed the tendered shares and thereby may have waived the provision not requiring it to redeem.

Eigerman claims that the Lasser memo was intended to prohibit Plan participants from offering shares for redemption during the window periods by threatening them with adverse employment consequences. It is true that the Lasser memo contains no explicit threat. However, the timing and the context of the memorandum, coupled with its statements that while the Plan's goal, when it was established, was to "mix long-term motivation and rewards with short-term awards," the "now better clarified view [is] that Putnam equity is awarded as a *long-term incentive* vehicle" (emphasis original), permit the inference, at this stage of the proceedings, that the Lasser memo unfairly deterred Eigerman from tendering his shares. Nothing more was required to survive a motion to dismiss.

to Putnam during the window periods, does not mention participants' personal need. Rather, this is discussed in § 7(e) of the Plan, which provides participants the opportunity to tender their shares to Putnam outside of the window periods in the event of "Unforeseen Personal Hardship," defined in § 2(a)(HH) of the Plan as "financial hardship arising from (i) extraordinary medical expense or other expenses directly related to illness or disability of the Participant, a member of the Participant's immediate family or one of the Participant's parents, (ii) payments necessary or required to prevent the eviction of Participant from Participant's principal residence or foreclosure on the mortgage on that residence or (iii) such other comparable circumstances as determined by the Committee [consisting of Putnam's chief executive officer and one or more other members of Putnam's board of directors, see § 2(I) of the Plan,] in its discretion."

In addition to asserting a claim for breach of contract, the complaint in this case alleges facts constituting a claim for a breach of the implied covenant of good faith and fair dealing. A complaint may not be dismissed if the facts alleged constitute any cognizable cause of action, even if the plaintiff has not articulated the specific cause of action. *Kessler* v. *Cambridge Health Alliance*, 62 Mass. App. Ct. 589, 592 (2004), citing *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 89 (1979). "Every contract in Massachusetts is subject, to some extent, to an implied covenant of good faith and fair dealing." *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 385, cert. denied sub nom. *Globe Newspaper Co.* v. *Ayash*, 126 S. Ct. 397 (2005), citing *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 473 (1991). "This implied covenant may not be 'invoked to create rights and duties not otherwise provided for in the existing contractual relationship.' " *Ayash* v. *Dana-Farber Cancer Inst.*, *supra*, quoting from *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). However, the "purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance" under the contract. *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, *supra*. See *Ayash* v. *Dana-Farber Cancer Inst.*, *supra*.

In the context of employment, the Supreme Judicial Court has recently held that an employer may be liable to an employee for a breach of the covenant where it has in bad faith failed to follow its own bylaws. *Id.* at 386. The court reasoned that "[s]uch a claim would be premised on the [employer's] breach of its promise, implicit in the employment relationship, to abide by its own bylaws in its conduct towards its [employees]." *Ibid.* Here, the complaint alleges that under the terms of the Plan, Putnam promised Eigerman that he could tender his shares to the company during two ten-day periods in the spring and fall of each year. Furthermore, the complaint alleges that Putnam failed to abide by its own procedures set forth in the Plan by sending a threatening memorandum to Eigerman with the intention of deterring him from exercising his rights under the Plan. As in *Ayash*, Eigerman's allegations of Putnam's bad faith failure to follow its own procedures set forth in the contract

between them constitute a cause of action for breach of the covenant.[6,7]

Following discovery, this case may well be dismissed on summary judgment. However, "it cannot now be said that no set of provable facts would entitle [Eigerman] to relief." *Kirkland Constr. Co. v. James*, 39 Mass. App. Ct. 559, 564 (1995). In short, dismissal pursuant to rule 12(b)(6) was premature.

*Judgment reversed.*

---

[6]Although the Supreme Judicial Court in *Ayash* ultimately vacated the judgment entered against the employer on the claim of a breach of the implied covenant of good faith and fair dealing, it did so because the employee had offered no evidence that she had suffered compensable loss as a result of the breach. *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. at 388. In contrast, Eigerman has alleged that he has suffered a loss of $35,562.50 due to Putnam's breach. Such an allegation is sufficient to survive a motion to dismiss.

[7]It is also possible that the Lasser memo could be construed as an amendment to the Plan, adding a new condition to the requirements of § 8(b)(i) (see note 5, *supra*). Section 10 of the Plan provides that the "Committee [consisting of Putnam's chief executive officer and one or more other members of Putnam's board of directors, see § 2(I) of the Plan,] . . . may from time to time amend or modify the Plan. . . . No amendment, modification, termination or suspension of the Plan shall in any manner materially adversely affect any award theretofore granted under the Plan; provided, however, that notwithstanding the above, the [compensation committee of the board of directors of the Marsh & McLennan Companies, Inc., the parent company of Putnam Investments, Inc.,] may amend, modify, terminate or suspend the Plan in any manner if such amendment, modification, termination or suspension is approved by holders of not less than 75% of the outstanding Class B shares, shares of Restricted Stock and Class B Shares subject to Options (in each case, whether or not vested) who vote with respect to such amendment, modification, termination or suspension . . . ."