MICHAEL J. DAROZA *vs.* D. MICHAEL ARTER & others.[1]

Suffolk. September 13, 1993. - November 10, 1993.

Present: WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Negligence*, Attorney at law. *Attorney at Law*, Malpractice, Negligence, Attorney-client relationship.

In a legal malpractice action in which the plaintiff claimed that the defendant attorneys were negligent in the prosecution of a third-party action brought pursuant to G. L. c. 152, § 15, by his employer's workers' compensation insurer, summary judgment in favor of the defendants was appropriate where the defendants owed no duty of care to the plaintiff either on the basis that the defendant attorneys' conduct established an implied attorney-client relationship, and that they owed him that relationship's concomitant duty not to commit malpractice [381-382], or that, even if the defendant attorneys' sole client was the plaintiff's employer's workers' compensation insurer, the plaintiff fell within the range of nonclients to whom a duty was owed [382-384].

CIVIL ACTION commenced in the Superior Court Department on September 24, 1987.

The case was heard by *James D. McDaniel, Jr.*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Elizabeth N. Mulvey* for the plaintiff.

*Marc LaCasse* (*Marjorie O. Dresser* with him) for John F. Folan.

*Louis N. Massery* (*William D. Gillis, Jr.*, with him) for D. Michael Arter & others.

GREANEY, J. The plaintiff, Michael J. DaRoza, brought this action in the Superior Court alleging negligence in the

---

[1] John F. McCarty, Jr., John F. Folan, and Liberty Mutual Insurance Company.

prosecution of a third-party action brought pursuant to G. L. c. 152, § 15 (1992 ed.), by his employer's workers' compensation insurer, the defendant, Liberty Mutual Insurance Company (Liberty). In the third-party action, Liberty sought to recover the compensation payments it had made to the plaintiff from the manufacturer and the seller (two separate entities) of the machine that had caused his injury. The other defendants are two attorneys employed by Liberty, D. Michael Arter and John F. McCarty, Jr., and a third attorney, John F. Folan. Liberty's third-party action was dismissed as untimely under the applicable statutes of limitations. In the present case, the plaintiff contends that the dismissal was caused by the negligence of the defendant attorneys, for which Liberty is also liable. A judge of the Superior Court granted summary judgment for the defendants. See Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974). The plaintiff appealed, and we granted an application for direct appellate review. We conclude that the entry of summary judgment for the defendants was proper because the defendant attorneys owed no duty to the plaintiff.

Viewed in the light most favorable to the plaintiff, the materials submitted on the summary judgment motion established the following facts. See *Alioto* v. *Marnell*, 402 Mass. 36 (1988). On October 8, 1981, the plaintiff was injured in an industrial accident involving a paper-cutting machine. He retained Attorney Malcolm Jones to handle his workers' compensation claim with Liberty. Jones also investigated the possibility of bringing a third-party claim pursuant to G. L. c. 152, § 15, on behalf of the plaintiff. In evaluating the possible third-party claim, Jones consulted Folan. Jones and Folan concluded that, due to the age of the machine, and the fact that alterations had been made to it by the plaintiff's employer, a third-party action should not be pursued. The lawyers communicated their opinion to the plaintiff, and he brought no third-party action.

Subsequently, Liberty decided to bring its own third-party claim under § 15 against the manufacturer and the seller of

the machine.[2] Arter, at McCarty's direction, prepared a complaint on behalf of Liberty which named the plaintiff in this case (DaRoza) as the plaintiff, as Liberty is permitted to do both by G. L. c. 152, § 15, and Mass. R. Civ. P. 17 (a), 365 Mass. 763 (1974). The complaint asserted claims for negligence and breach of warranty on the part of the machine's manufacturer and the seller. Arter filed the complaint in the Superior Court on October 9, 1984. Arter believed that the action had been commenced within the relevant three-year statute of limitations because the previous day was a legal holiday.[3] (It will be recalled that the plaintiff's industrial accident occurred on October 8, 1981.) The third-party action was removed to the United States District Court for the District of Massachusetts. Because McCarty and Arter usually did not handle Federal court litigation, the third-party case was referred to Folan's firm.

---

[2] As has been indicated, the stage for Liberty's third-party action was set by G. L. c. 152, § 15. This provision has since 1939 allowed either the injured employee or the employer's workers' compensation insurer to bring an action against a third party who may be liable for the employee's injury. However, prior to 1971, if the employee claimed compensation benefits, he could bring a third-party action only if the compensation claim was made within one year (originally six months) of the injury, and if the insurer did not exercise its exclusive right to bring the third-party action within fifteen (originally nine) months after the injury. G. L. c. 152, § 15, as appearing in St. 1965, c. 487. In 1971, § 15 was amended to allow either the injured worker or the compensation insurer to bring the action after benefits had been claimed, and to give the employee an exclusive right to bring an action before claiming compensation. St. 1971, c. 888. In 1980, § 15 was amended again to grant the employee the exclusive right to bring the third-party action in the first seven months after the injury without regard to whether the employee had already claimed benefits. St. 1980, c. 488. Section 15 has thus seen a gradual expansion of the employee's right to control the third-party action by electing to initiate the action. See *Costa* v. *Liberty Mut. Ins. Co.*, 29 Mass. App. Ct. 176, 178 (1990) ("The legislative development of § 15 is one of transformation from an insurer's right . . . to a joint right at which the employee has the first go"). When Liberty proceeded with the claim, the plaintiff had chosen not to go forward with his own action.

[3] The negligence claim was governed by the three-year statute of limitations set forth in G. L. c. 260, § 2A (1992 ed.). The breach of warranty claims were governed by the three-year statute of limitations set forth in G. L. c. 106, § 2-318 (1992 ed.).

After the referral, but before Folan had filed an appearance, the defendant manufacturer moved to dismiss the claim against it on the ground that the claim had not been timely filed. The motion to dismiss was received by the attorneys at Liberty, but, because the case had been referred to outside counsel, the motion was put in a file without an attorney's review. As a result, the motion to dismiss went unopposed and was granted in the Federal District Court as to the entire case on April 12, 1985. When the order of dismissal was received by Liberty, it was seen by Arter, who made contact with Folan. Folan filed his appearance in the case and moved for reconsideration of the order of dismissal. That motion was denied on May 30, 1985. Liberty decided not to take an appeal from the judgment of dismissal.

At the time of the referral of the case to him, Folan did not realize that the case involved the same individual for whom he had previously investigated the possibility of a third-party claim. However, by the time the motion for reconsideration of the dismissal had been denied, Folan understood that it was the same claim that he had previously, in consultation with the plaintiff's attorney, Jones, decided had not been worth pursuing.

The only direct contact between any defendant and the plaintiff during the course of the third-party action occurred in a letter written by Folan on March 22, 1985, requesting the plaintiff's assistance in answering interrogatories propounded by the defendant manufacturer in the third-party action. Folan's letter stated that his office had "been assigned by Liberty Mutual Insurance Company to represent you" in the third-party action, and went on to explain that the action had been initiated by Liberty "pursuant to its right of subrogation under the Massachusetts workmen's compensation statute." The plaintiff furnished answers to the interrogatories which were used by Folan to prepare responses to the discovery.

Against this factual background, the plaintiff claims that the defendant attorneys were negligent in bringing the third-party action too late and not opposing or appealing its dis-

missal, and that their negligence damaged him. In order to succeed on his claim of legal malpractice, the plaintiff must show that the defendant attorneys owed him a duty of care in their prosecution of the third-party action. See *Dinsky* v. *Framingham*, 386 Mass. 801, 804-805 (1982), and cases cited. Whether such a duty exists is a question of law. *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 629 (1989). The plaintiff proposes two sources of this duty. First, he claims that the defendant attorneys' conduct established an implied attorney-client relationship, and that they owed him that relationship's concomitant duty not to commit malpractice. Alternatively, the plaintiff argues that, even if the defendant attorneys' sole client was Liberty, he falls within the range of nonclients to whom a duty was owed. We disagree with both propositions.

1. The plaintiff contends that an implied attorney-client relationship resulted from the manner in which the parties conducted themselves.[4] We have previously described the circumstances in which an implied attorney-client relationship can arise as follows: "An attorney-client relationship may be implied 'when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.'" *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 817-818 (1983), quoting *Kurtenbach* v. *TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977). All three requirements of this test must be met to establish the relationship. The plaintiff's claim fails to meet the first requirement.

There is nothing to show that the plaintiff sought any advice or assistance from any of the defendant attorneys. The plaintiff does not seriously contend otherwise, but relies solely on two actions of the attorneys in an effort to show that an implied attorney-client relationship was established.

---

[4]There is no contention that any of the defendant attorneys entered into an express attorney-client relationship with the plaintiff.

The first action concerns the use of his name as the sole plaintiff in the complaint in the third-party action, and the signing of the complaint by Arter, in the usual fashion, as his attorney of record.[5] The second action was Folan's letter of March 22, 1985, stating that he had been engaged to pursue Liberty's right of subrogation in the third-party action, requesting that the plaintiff provide him with information so that interrogatories filed by the defendants in the third-party action could be answered, and using the information furnished by the plaintiff to answer the interrogatories.

Although these actions might have pertinence to the third element of the *DeVaux* test, they cannot satisfy the first element. Neither action involved the plaintiff in seeking advice or assistance from any of the defendant attorneys while they were acting for Liberty. At no other time did the plaintiff seek their advice.[6] No implied attorney-client relationship came into existence.

2. An attorney also may owe a duty to someone who is not his client "who the attorney knows will rely on the services rendered." *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 524, cert. denied, 493 U.S. 894 (1989). Such a duty may arise, however, only if the attorney reasonably should have foreseen reliance on the part of the third party.

---

[5]The use of the plaintiff's name in the third-party action is expressly permitted by G. L. c. 152, § 15, and Mass. R. Civ. P. 17, 365 Mass. 763 (1974). An insurer might be inclined to use the employee's name when bringing a § 15 action against a third party so that a jury does not know that any recovery might benefit the insurer rather than the employee.

[6]The plaintiff refers to cases in which an implied attorney-client relationship was found. In none of these cases was the relationship formed as a result of unilateral action by the attorney. In *In re Schwartz*, 99 N.J. 510 (1985), an attorney-client relationship was found where the client had asked the attorney to appeal a case that he had previously tried for her. *Id.* at 513. In *Crest Inv. Trust, Inc.* v. *Comstock*, 23 Md. App. 280 (1974), the appellate court upheld a determination that an attorney-client relationship existed where the plaintiff had proposed seeking the advice of his own counsel, prompting the defendant attorney's response that he was the plaintiff's attorney. *Id.* at 294-295. In the *DeVaux* case, where we remanded for trial as to the establishment of the relationship, the plaintiff had repeatedly sought advice from the defendant. *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 816-817 (1983).

*Page* v. *Frazier*, 388 Mass. 55, 65 (1983). When the situation involves potentially conflicting duties to the attorney's actual client and the third party claiming the benefit of reliance (as would be the case in a third-party action brought by an insurer under G. L. c. 152, § 15, for its own benefit with the possibility of an excess recovery), "we are less likely to impose a duty to nonclients." *Robertson* v. *Gaston Snow & Ely Bartlett*, *supra* at 524. *Page* v. *Frazier*, *supra* at 63. See also *Logotheti* v. *Gordon*, 414 Mass. 308, 311-312 (1993).

The plaintiff points to Folan's March 22, 1985, letter (in which Folan wrote to the plaintiff that he had been assigned to represent "you") to argue that the defendant attorneys reasonably should have foreseen that he would rely on their services. This argument obviously fails as to Arter and McCarty, who did not draft or send the letter. They could not have anticipated that the third-party action they brought solely on behalf of Liberty could be described as one on behalf of the plaintiff, and they could not have foreseen that the plaintiff might rely on their services with respect to the third-party action.

The letter is also insufficient, as matter of law, to establish that Folan owed a duty of care to the plaintiff as a nonclient. When Folan wrote the plaintiff on March 22, 1985, the statutes of limitations on the third-party action had run some five months earlier. See note 2, *supra*. The plaintiff had taken no action to file a claim, on his own behalf, in which he could have directed the conduct of his own attorney.[7] At the time Folan wrote the letter, based on the passage of time and the fact that Arter and McCarty had brought the action solely for Liberty, the plaintiff had ceded to Liberty the right to initiate and control any third-party claim arising from his industrial accident. Moreover, Folan owed a duty to Liberty,

---

[7]The plaintiff's statement in his affidavit that "had I known that they [the defendant attorneys] were not representing me, I would have attained [*sic*] counsel on my own to properly and timely pursue my claim," is of no relevance. Claimed reliance by the nonclient is not dispositive. It must be shown that the attorney should reasonably foresee that the nonclient will rely upon him for legal services.

his client, whose interests could have differed materially from the plaintiff's with respect to settlement of the third-party action. See *Costa* v. *Liberty Mut. Ins. Co.*, 29 Mass. App. Ct. 176, 178-179 (1990) ("The drafters of § 15 apparently assumed an adversary relationship between the insurer and the employee-claimant . . . hence the requirement of a referee").[8] On the present facts, we conclude that Folan did not owe a duty of care to the plaintiff as a nonclient.[9]

3. Our conclusion that the defendants are entitled to judgment as matter of law, because they owed no duty to the plaintiff, renders it unnecessary to consider issues concerning the alternative ground given by the judge for summary judgment. That ground involved a conclusion by the judge that the plaintiff had not shown harm because nothing in the record indicated that there would have been any excess recovery in the third-party action which would have been paid to him.

*Judgment affirmed.*

---

[8]Indeed, the prospect of conflict between insurer and employee in third-party actions is such that G. L. c. 152, § 15, furnishes a mechanism which attempts to resolve the conflict by providing that any settlement in a third-party action, whether reached by the insurer or the employee, must be approved by the Industrial Accident Board, the reviewing board, or the court in which the action has been commenced.

[9]We do not understand the plaintiff to argue that he was the intended beneficiary of an agreement between Liberty and the defendant attorneys. See 1 R. Mallen & J. Smith, Legal Malpractice § 7.11 (3d ed. 1989 & 1992 Supp.); cf. *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535 (1979). A third party beneficiary argument would fail on these facts. There is nothing to show that Liberty brought the action in order to benefit the plaintiff. Liberty had paid workers' compensation benefits to the plaintiff and its action was brought to recoup those payments.