CHESWELL, INC. and Wesfield
Construction Co., Inc.,
Plaintiffs

v.

PREMIER HOMES AND LAND COR-
PORATION, James Kenney, Monson
Savings Bank and Robert Ward, De-
fendants

No. CIV.A.02–30115–KPN.

United States District Court,
D. Massachusetts.

May 26, 2004.

Deborah D. Ferriter, Bulkley, Richardson & Gelinas, Felicity Hardee, Bulkley, Richardson & Gelinas, LLP, Springfield, MA, for Cheswell, Inc., Wesfield Construction Co., Inc, Plaintiffs.

Michael J. Coyne, Bacon & Wilson, P.C., Springfield, MA, for Monson Savings Bank, Defendant.

Robert M. Mack, Morrison, Mahoney & Miller, Springfield, MA, for Robert Ward, Defendant.

David J. Noonan, Attorney at Law, Amherst, MA, for Premier Homes and Land Corporation, James Kenney, Defendants, Pro se.

*MEMORANDUM AND ORDER WITH REGARD TO ROBERT WARD'S MOTION FOR SUMMARY JUDGMENT (Document No. 115)*

NEIMAN, United States Magistrate Judge.

Cheswell, Inc. ("Plaintiff") alleges that Robert Ward ("Ward"), an attorney and notary, committed negligence and fraud in failing to record a mortgage relating to a lease agreement between Premier Homes and Land Corp. ("Premier") and Chesterfield Investments ("Chesterfield"). Plaintiff further alleges that Ward's conduct amounts to unfair and deceptive acts or practices in violation of Mass. Gen. L. ch. 93A ("chapter 93A"). Ward has filed a motion for summary judgment on Counts Ten, Eleven and Twelve of Plaintiff's Second Amended Complaint.[1]

The parties have consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c). For the reasons which follow, the court will allow Ward's motion as to Count Ten for fraud and Count Twelve alleging a violation of chapter 93A, but, for the moment, will deny Ward's motion as to Count Eleven for negligence, subject to the court being satisfied that Plaintiff is the real party in interest. A separate memorandum and order issued this day addresses co-defendant Monson Savings Bank's motion for summary judgment.

## I. BACKGROUND

Premier is in the business of developing commercial and residential real estate in and around Belchertown. James Kenney ("Kenney"), one of the co-defendants, is President of Premier. In 2000, Premier purchased real estate on Main Street in Belchertown with the intention of subdividing part of the land and selling commercially zoned lots. It later applied to Belchertown to obtain approval for a subdivision plan.

On September 12, 2001, before the subdivision was accepted, Premier, through Kenney, negotiated a 99-year ground lease for approximately two acres of the property with James H. Loney and Richard Harrington, doing business as Chesterfield, a partnership which specializes in building post offices. Article 1.07 of the ground lease granted Chesterfield an option to purchase the two acre parcel; Chesterfield could "exercise it's [sic] option to purchase the lease area for $1.00 after and only after [Premier] has received definitive subdivision approval and expiration of all applicable appeal periods." Article 13 of the ground lease included the following "subordination" provision regarding further encumbrances on the two acres: "Premier agrees that the Premises will not be encumbered by any mortgage, pledge, assignment or other financial ·obligations ("Financial Encumbrance"), unless the Financial Encumbrance is subject to the provisions of this lease."

Also included in the ground lease was a provision for a mortgage on the property to be granted by Premier to Chesterfield to secure a $60,000 advance. The ground lease specified that the $60,000 was to be used for Premier's share of common area site costs and that Premier was to repay the advance at an interest rate of 8.5% amortized over ten years with a three year balloon.[2] At the time, there already was a

---

1. Although there are in fact two plaintiffs, Cheswell, Inc. and Wesfield Construction Co., Inc. ("Wesfield"), their counsel acknowledged at oral argument that Wesfield has no claim against Ward.

2. This $60,000 mortgage is not to be confused with a distinct $60,000 loan referenced in Article 15.17 of the ground lease. With respect to the latter, Chesterfield had loaned Premier $60,000 during the development of the property, which amount was to be includ-

first mortgage securing the property held by United Cooperative Bank.

On September 11, 2001, one day prior to the execution of the ground lease, Kenney asked Ward to draft a mortgage and promissory note reflecting the terms of the $60,000 mortgage. That same day, or perhaps one day later, Ward provided a draft of the mortgage to Kenney, who altered it and returned it to Ward's paralegal, who made the corrections.

The lease, mortgage and promissory note were executed in multiple duplicates on September 12, 2001. Although James H. Loney's signature appears on the lease, the document was actually signed in his name by his father, James A. Loney. Evidently, James H. Loney had no real duties with respect to Chesterfield, but was named as a principal to protect his father's assets from a judgment creditor. For his part, James A. Loney claims that he was simply an "unpaid advisor" to Chesterfield. It is not clear whether James A. Loney was authorized to sign his son's name under a power of attorney.

According to James A. Loney, two originals of the mortgage and note were executed on September 12, 2001. Plaintiff, however, claims that three "original" sets are actually in existence: Steven Weiss, an attorney who represented Premier in its subsequent bankruptcy, was in possession of two, and Plaintiff's counsel was in possession of the third. In any event, it is undisputed that Ward notarized the parties' signatures on the mortgage and the promissory note.

There is, however, some dispute as to what then ensued. Ward claims that Kenney and James A. Loney each left his office with an original mortgage and that he himself did not retain copies of the mortgage or the promissory note. In some contrast, Plaintiff, relying on the testimony of James A. Loney, alleges that either Kenney or Ward promised to record the documents, although Loney cannot remember who made the promise. Both Kenney and Ward deny making such a promise. Moreover, Kenney claims that James A. Loney told him that Alan Blanker ("Blanker"), yet another attorney, would record the mortgage on Chesterfield's behalf.

There is also a dispute as to whether Ward was acting as Premier's attorney in the course of the execution of the mortgage and promissory note. Although Ward drafted the mortgage and note— services for which he was paid $300 by Premier—he claims that he was acting merely as a notary during the actual execution of the documents. It is, however, undisputed that neither Ward nor Kenney recorded the mortgage. That, evidently, was not accomplished until February 7, 2002, when it was recorded by Blanker, who had obtained the mortgage from Suzanne Harrington, who, in turn, had received a duplicate original on September 12, 2001.[3]

Regardless, on January 30, 2002, Chesterfield assigned the promissory note, ground lease and mortgage to Plaintiff. Once again, James A. Loney signed his son's name to the documents. It was not

ed in the purchase price if Chesterfield chose to exercise its option. This distinct $60,000 loan is not in controversy.

**3.** Suzanne Harrington, together with Richard Harrington, were directors of Wesfield which also specializes in the construction and renovation of post office facilities. Wesfield was

incorporated in New Hampshire on April 3, 1996. The Harringtons are also directors of Plaintiff, incorporated on December 20, 2001, while James A. Loney is the grantor of a trust which holds fifty percent of Plaintiff's stock. James H. Loney is not employed by and has no ownership interest in Plaintiff.

until March 21, 2002, however, that Plaintiff arranged to record a Notice of Lease in the registry of deeds. In the meantime, Premier had obtained loans from Monson Savings Bank ("Bank") to finance certain construction costs at the subdivision. The initial mortgage from Premier to the Bank was recorded on October 24, 2001. A second mortgage granted to the Bank was recorded on February 5, 2002.

On March 6, 2003, Premier filed a Petition in Bankruptcy in the United States Bankruptcy Court for the District of Massachusetts. Although the petition was filed under Chapter 11 of the Bankruptcy Code, it was later converted to a Chapter 7 liquidation proceeding. On October 9, 2003, the Bankruptcy Court approved the transfer of the two acres from the Trustee in Bankruptcy to Plaintiff. The Trustee's deed was recorded on November 14, 2003, and the Bank thereupon discharged the mortgages as they applied to the parcel.

In the present action, Plaintiff claims to have suffered monetary damages as a result of Ward's failure to record the $60,000 mortgage. In particular, Plaintiff claims that, because the mortgage was recorded late, it was subordinate to the mortgages subsequently granted by Premier to the Bank.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Although some facts may be disputed by the parties, the summary judgment standard requires that there be no genuine issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Substantive law governs materiality, and only disputes over facts that might affect the outcome of the trial are material. *Id.* To avoid summary judgment, a plaintiff must make a sufficient showing of the elements essential to the case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. DISCUSSION

Ward first questions whether Plaintiff has standing to sue him. Even if Plaintiff has standing, Ward continues, he is entitled to summary judgment with regard to each of the claims against him. The court will consider Ward's arguments in turn.

### A. Plaintiff's Standing

There is no dispute that the mortgage, promissory note and ground lease were created by, and entered into between, Premier and Chesterfield. Plaintiff asserts, however, that it is the assignee of Chesterfield's rights under these documents and, therefore, has standing to enforce all rights related thereto.

Ward claims that the validity of Chesterfield's assignment to Plaintiff is "questionable to say the least" and makes four arguments in particular. First, Ward asserts that the assignment is invalid because Plaintiff has not produced sufficient evidence that James A. Loney had permission to sign his son's name. Second, Ward argues that Chesterfield did not assign the note to Plaintiff and that Plaintiff, therefore, has no security interest in the property. Third, Ward argues that the ground lease required Premier's permission to an assignment and, since no such permission

was granted, Chesterfield's assignment to Plaintiff is invalid. Finally, Ward asserts that, even if Chesterfield assigned the three documents to Plaintiff, there is no evidence that Chesterfield assigned Plaintiff any of its non-documentary rights against Ward upon which Plaintiff's claims against him are grounded.

■ Ward's first two arguments can be dealt with in short order. Even absent evidence that James A. Loney had permission to sign his son's name to the documents, Harrison's signature alone was sufficient to bind the partnership. *See* Mass. Gen. L. ch. 108A, § 9(1). Moreover, Chesterfield did in fact assign the promissory note to Plaintiff.

■ Ward's third argument—that the ground lease required Premier's permission before it could be assigned to Plaintiff and that no such permission was granted—is similarly unpersuasive. Article 12.1 of the ground lease provides as follows:

All provisions hereof are to be construed as covenants and agreements as though the words imparting covenants and agreements were used in each and every Article hereof. No rights, however, shall inure to any assignee, transferee or subtenant of Tenant unless such transfer, assignment or subletting has been approved if such approval is required by Landlord in strict accordance with the terms hereof.

While the parties themselves may disagree about the construction of this provision, the court does not find its language in the least bit ambiguous. *See Allen v. Adage, Inc.*, 967 F.2d 695, 698 (1st Cir.1992) ("The question of whether a contract term is ambiguous is one of law for the judge."). *See also Alison H. v. Byard*, 163 F.3d 2, 6 (1st Cir.1998) (a contract is only ambiguous if "the language is reasonably prone to different interpretations"; it is "not ambiguous simply because litigants disagree

about its proper interpretation") (citations and internal quotation marks omitted). Article 12.1 clearly provides that Chesterfield could not assign its rights under the ground lease without approval "if the approval [was] required by [Premier] in strict accordance with the terms." As Plaintiff notes, however, the ground lease nowhere requires Premier's approval. More to the point, there has been no evidence offered which indicates that Premier otherwise asked for or required such approval.

■ Ward's final argument, however, has merit. In essence, Ward claims that Plaintiff has no standing because Chesterfield did not assign any of its rights against him to Plaintiff. As the parties recognize, a buyer or seller, in general, may assign all rights under a contract. *See* Mass. Gen. L. ch. 106, § 2–210(2). ("[U]nless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance."). However, as Ward argues, Plaintiff's claims against him do not arise under either the mortgage, ground lease or promissory note. Rather, Plaintiff's claims grow out of the non-contractual relationship between Ward and Chesterfield (in the persons of Harrison and James A. Loney); and Plaintiff has produced no evidence that Chesterfield assigned Plaintiff any of these rights. That failure, Ward argues, is fatal to Plaintiff's causes of action against him.

In large part, the court agrees with Ward's argument that Plaintiff has not yet demonstrated that it is the assignee of Chesterfield's non-contractual rights against Ward or, for that matter, Premier

and Kenney. Therefore, in order to ensure that this matter is properly adjudicated—at least Count Eleven, the one claim which the court believes should otherwise survive (see *infra* )—Plaintiff must prove that it, not Chesterfield, is the real party in interest. This is not a mere technicality. As described, Chesterfield and Plaintiff are comprised of different persons. Chesterfield's principals are Richard Harrington and James H. Loney. Fifty percent of Plaintiff's stock, on the other hand, is held in trust, and James H. Loney has no ownership interest in Cheswell. The court therefore invites Plaintiff to introduce evidence that Messrs. Loney and Harrington d/b/a Chesterfield properly assigned to Plaintiff such rights as may have arisen out of Chesterfield's relationship with Ward, Premier and Kenney.

### B. *Substantive Counts*

#### 1. *Count Eleven—Negligence*

Plaintiff alleges that Ward was negligent in failing to record the mortgage. At oral argument, Plaintiff clarified that it is not bringing its claim against Ward for legal malpractice. Thus, Plaintiff does not assert that Ward ever served as Chesterfield's attorney. Rather, Plaintiff asserts that Ward, was an attorney for Premier at the time the $60,000 mortgage was executed on September 12, 2001 and also owed a duty of care to Chesterfield, a non-client, that he negligently breached.

■■■ At the outset, the court finds that Ward was acting as Premier's attorney on September 12, 2001, not merely as a notary. Ward offers no convincing argument to the contrary. Nonetheless, to sustain its negligence claim, Plaintiff must first prove, as a matter of law, that Ward, as an attorney, owed a duty to Chesterfield. *See DaRoza v. Arter*, 416 Mass. 377, 622 N.E.2d 604, 607 (1993). "It is generally recognized that 'an attorney owes a

duty to non-clients who the attorney knows will rely on the services rendered.' " *McCarthy v. Landry*, 42 Mass.App.Ct. 488, 678 N.E.2d 172, 174 (1997) (quoting *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 536 N.E.2d 344, 349–50 (1989)). However, such a duty arises "only if the attorney reasonably should have foreseen reliance on the part of the third party." *DaRoza*, 622 N.E.2d at 608.

■■■ Plaintiff asserts that a duty to Chesterfield arose on September 12, 2001, when Ward allegedly promised to record the mortgage. In Plaintiff's view, the following excerpt from James A. Loney's deposition supports its contention that such a promise was made and that Ward should have reasonably foreseen that Chesterfield (through Loney) would rely on that promise:

Q. Just tell me in your own words to the best of your memory what you remember being said about recording this mortgage at that meeting?

A. That—the best of my recollection is I made the statement that I'm not an attorney, I am really not familiar with the methods and systems for recording notes, mortgages or anything, and would you guys please record the promissory note—would you record whatever needs to be recorded. The response that I had was yes. I do not recall whether that yes was from Mr. Ward or from Mr. Kenney or both.

Ward, in contrast, argues that, even if a promise had been made to record the mortgage, Loney's reliance on that promise was unreasonable as a matter of law because of the adversarial nature of the transaction. *See One Nat'l Bank v. Antonellis*, 80 F.3d 606, 611 n. 4 (1st Cir.1996).

In the court's view, Plaintiff has the stronger argument, at least for summary judgment purposes. First, the court be-

lieves that Loney's testimony raises a genuine issue of material fact. A jury could reasonably determine, after considering this testimony and other evidence, that Ward made a promise to record the mortgage. To be sure, the jury may instead conclude that no one made such a promise. For summary judgment purposes, however, the facts and the reasonable inferences derived therefrom must be viewed in a light most favorable to Plaintiff. *See Rosen Constr. Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 364 F.3d 399, 404 (1st Cir.2004).

■ Second, while courts are reluctant to impose a duty on an attorney when that duty would conflict with a duty owed to a client, *see Lamare v. Basbanes*, 418 Mass. 274, 636 N.E.2d 218, 219 (1994) (citing cases), Ward has failed to demonstrate that the recording of the mortgage for Chesterfield was so adversarial in nature as to render unreasonable any reliance by Chesterfield, a non-client. Similarly, Ward has not explained how a duty on his part to record the mortgage would have conflicted with a duty independently owed to Premier, his client. In effect, if Ward promised Loney to record the mortgage, he would have offered to undertake a ministerial task only, not advice that amounts to a potential conflict of interest. *See Dolan v. Hickey*, 385 Mass. 234, 431 N.E.2d 229, 231 (1982) ("The acts of drafting documents and presenting them for execution, without more, do not amount to 'advice'. . . .").

■ Third, Massachusetts courts have been willing to impose a duty of reasonable care when an attorney is acting for the benefit of both the client *and* the non-client. *See Kirkland Constr. Co. v. James*, 39 Mass.App.Ct. 559, 658 N.E.2d 699, 701 (1995) (citing *Logotheti v. Gordon*, 414 Mass. 308, 607 N.E.2d 1015, 1017–18 (1993)). That may well prove to be the case here. For all these reasons, the court will deny Ward's motion for summary judgment on Count Eleven, again subject to Plaintiff's proof that it is the real party in interest.

### 2. Count Ten—Fraud

■ Plaintiff also claims that Ward committed fraud by failing to record the mortgage after allegedly promising to do so. In order to recover for fraud, a plaintiff must prove the following:

> (1) the defendant made a misrepresentation of fact; (2) it was made with the intention to induce another to act upon it; (3) it was made with the knowledge of its untruth; (4) it was intended that it be acted upon, and that it was in fact acted upon; and (5) damage directly resulted therefrom.

*Equipment & Sys. for Indus., Inc. v. Northmeadows Constr. Co.*, 59 Mass.App. Ct. 931, 798 N.E.2d 571, 574 (2003) (citing *Graphic Arts Finishers, Inc. v. Boston Redev. Auth.*, 357 Mass. 40, 255 N.E.2d 793, 796 (1970)). Here, however, Plaintiff has produced no evidence that would support any of these elements. *Cf.* Fed. R.Civ.P. 9(b) (averments of fraud "shall be stated with particularity"). In fact, Plaintiff conceded at oral argument that, other than pure speculation, it has uncovered no evidence of bad faith by Ward in over eighteen months of discovery.[4] Accordingly-

---

4. In a post-argument Motion for Pretrial Conference, Plaintiff stated that new information exists "regarding [Ward's] involvement in certain fraudulent activities of Premier . . . ." (Document No. 133 at 1.) The court denied Plaintiff's motion, essentially for the reasons set forth in Ward's opposition thereto. One of Ward's arguments, which the court accepted, was that the allegedly "new" information was neither material nor relevant to the fraud claims at issue in the instant motion for summary judgment.

ly, the court will grant summary judgment to Ward on Count Ten.

### 3. *Count Twelve—Chapter 93A*

Plaintiff's final cause of action against Ward arises under chapter 93A. While an attorney may be liable to a non-client under chapter 93A in certain circumstances, *Kirkland Constr. Co.*, 658 N.E.2d at 702; *see also Coggins v. Mooney*, 1998 WL 156998, at *5 (Mass.Super. Apr. 3, 1998) (law firm may be subject to chapter 93A liability if it "joins its client in marketplace communications to the adversary and if those communications knowingly or carelessly turn out to be false, misleading, and harmful"), the court believes such liability does not lie here.

 For one thing, an attorney must have acted in a business context in order for an attorney to be held liable under chapter 93A, *see Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 681 N.E.2d 1189, 1195 (1997), i.e., his or her activity must "cross a boundary" "from traditional representation into active participation in trade and commerce," *Coggins*, 1998 WL 156998, at *5. Ward's alleged promise to record the mortgage did no such thing. *See also First Enter., Ltd. v. Cooper*, 425 Mass. 344, 680 N.E.2d 1163, 1165 (1997) (making legal allegation is not "trade or commerce" for chapter 93A purposes); *Malonis v. Browning–Ferris Indus., Inc.*, 2001 Mass.App. Div. 149, 152 (Mass.App. Div. June 29, 2001) (chapter 93A liability not invoked where attorney had no "commercial relationship" with non-client). In fact, Plaintiff itself has classified Ward's promise to record the mortgage as a "ministerial act."

On a more fundamental level, there is no evidence that Ward's actions attained "a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce" i.e., that he was "immoral, unethical, oppressive, or unscrupulous." *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App.Ct. 498, 396 N.E.2d 149, 153 (1979). *See also Williams v. Arndt*, 626 F.Supp. 571 (D.Mass.1985); *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1513 (1st Cir.1989). Accordingly, the court will grant Ward's motion for summary judgment on Count Twelve.

### IV. CONCLUSION

For the reasons stated, the court ALLOWS Ward's motion as to Counts Ten and Twelve. The court is also prepared to DENY Ward's motion as to Count Eleven subject to proof that Chesterfield properly assigned to Plaintiff its rights arising out of the relationship between Chesterfield and Ward. Plaintiff shall provide such proof to the court within fourteen days.

IT IS SO ORDERED.