**BOSTON PROPERTY EXCHANGE TRANSFER COMPANY f/k/a Benistar Property Exchange Trust Company, Inc., Plaintiff,**

**v.**

**Joseph IANTOSCA, Individually and as Trustee of the Faxon Heights Apartments Realty Trust and Fern Realty Trust, Belridge Corporation, Gail A. Cahaly, Jeffrey M. Johnston, Bellemore Associates, LLC, Massachusetts Lumber Company, Inc., Zelle McDonough & Cohen LLP, Anthony R. Zelle, P.C. and Nystrom Beckman & Paris LLP, Defendants.**

**Civil Action No. 08–12069–NMG.**

United States District Court, D. Massachusetts.

Feb. 18, 2010.

---

George A. Berman, Peabody & Arnold LLP, Boston, MA, Steven D. Weil Doherty, Ciechanowski, Dugan & Cannon, PC, Franklin, MA, for Defendants.

Sean T. Carnathan, O'Connor, Carnathan and Mack LLC, Burlington, MA, Eric C. Osterberg, Joseph M. Pastore, Frances Codd Slusarz, Fox Rothschild LLP Jack E. Robinson, Stamford, CT, for Plaintiffs.

### MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff Boston Property Exchange Transfer Co. f/k/a Benistar Property Exchange Trust Co. ("BPE") brought suit against defendants Joseph Iantosca, Belridge Corp., Gail A. Cahaly, Jeffrey M. Johnston, Bellemore Associates, LLC and Massachusetts Lumber Co. (collectively,

"the non-attorney defendants") and defendants Zelle McDonough & Cohen, LLP, Anthony R. Zelle, P.C. and Nystrom Beckman & Paris, LLP (collectively, "the attorney defendants") for negligence, malpractice, breach of fiduciary duty, breach of contract, violation of the Massachusetts Consumer Protection Act, M.G.L.c. 93A, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110b(a). Before the Court are separate motions to dismiss filed by the attorney defendants and the non-attorney defendants.

## I. *Background*

### A. **Factual Background**

This case arises out of the aftermath of a prior state court action. The non-attorney defendants, represented by the attorney defendants, previously brought suit against BPE in Massachusetts state court for improperly holding and investing their escrowed funds ("the Cahaly action"). While that case was pending, BPE commenced a NASD arbitration against UBS PaineWebber ("the PaineWebber arbitration") for having caused the losses at issue in the Cahaly action. BPE's original statement of claim in the PaineWebber arbitration alleged damages of approximately $88 million.

In the Cahaly action, the non-attorney defendants obtained a judgment against BPE for over $20 million. As a part of the collection effort, on November 3, 2004, the state court assigned the right to prosecute BPE's claims in the PaineWebber arbitration to the non-attorney defendants who were represented by the attorney defendants.

In that capacity, on July 22, 2005, the attorney defendants filed an amended statement of claims with the arbitration panel. They sought to alter the legal theory on which the claim was brought and, instead of demanding $88 million, reduced their claim to $8.6 million in compensatory damages plus punitive damages, attorneys' fees, interest and costs. The amendment setting forth a new theory and the accompanying reduction in damages alleged was allowed over BPE's objection.

On December 15, 2005, defendants succeeded on the new theory and the arbitration panel entered an award against Paine-Webber in the amount of $12.6 million (primarily made up of compensatory damages and interest). Plaintiff's complaint in this action stems from its displeasure with that award, which is about 15% of what it had originally sought. It claims that the lower award was "directly and proximately caused by the wrongful acts of defendants in their prosecution of [BPE's] claims" and that, as a result, they are liable to BPE for the dramatic difference between the amount of damages initially claimed and the amount of damages awarded.

### B. **Procedural History**

BPE filed its complaint in this action on December 12, 2008. The attorney defendants and the non-attorney defendants both filed motions to dismiss the original complaint in July, 2009. Instead of opposing those motions, BPE filed an amended complaint in September, 2009 and the following month, the attorney and non-attorney defendants filed separate motions to dismiss the amended complaint incorporating and updating arguments from their initial motions to dismiss. After obtaining an extension of time, BPE filed an opposition to both motions on November 13, 2009.

This Court convened a scheduling conference on January 6, 2010. There, it denied as moot defendants' motions to dismiss the original complaint and heard oral

argument on the motions to dismiss the amended complaint.

## II. *Analysis*

### A. Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). Although well-pled facts must be credited, however, "bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like ... can safely be ignored." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir.2000).

In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet*, 83 F.Supp.2d at 208. This includes matters of public record, such as prior litigation documents. *E.g., Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001).

### B. Application

The attorney defendants and the non-attorney defendants make similar arguments: 1) they did not owe a legal duty to BPE that can support a claim of negligence, malpractice, breach of fiduciary duty or breach of contract, 2) the state consumer protection law claims fail as a matter of law and 3) all but one of plaintiff's claims are time-barred. These contentions and the related Counts are considered in turn.

### 1. Counts I—III Against the Attorney Defendants

■ Counts I through III allege negligence, breach of duty of care and breach of fiduciary duty against the attorney defendants. To establish liability under each of these causes of action, plaintiff must establish that the defendants owed it a duty and that can be done in two ways. First, a duty arises from an attorney-client relationship which can be express or implied. *E.g., DaRoza v. Arter*, 416 Mass. 377, 622 N.E.2d 604, 607 (1993). Such a relationship may be implied where 1) a person seeks advice or assistance from an attorney, 2) the advice or assistance sought pertains to matters within the attorney's professional competence and 3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. *Id.*

■ Alternatively, even absent an attorney-client relationship, an attorney may owe a duty to a non-client who the attorney knows will rely on any services rendered. *E.g., Spinner v. Nutt*, 417 Mass. 549, 631 N.E.2d 542, 544 (1994). Courts are especially reluctant, however, to impose such a duty where there is even a potential conflict of interest between the attorney's clients and the non-clients. *Id.* Notwithstanding any foreseeable reliance, therefore, conflicting loyalties have barred extending a duty from a trustee's attorney to the trust's beneficiaries, *id.* at 544–45, or from a workers' compensation insurer's counsel to a worker in whose name an action was brought and who stood to re-

cover any excess. *DaRoza,* 622 N.E.2d at 608.

 Here, the attorney defendants contend that Counts I–III must be dismissed because they did not owe a duty to BPE, a non-client. They state that the right to prosecute the PaineWebber arbitration did not attach a duty to risk recovery on the false hope of an over-blown legal theory. Moreover, the attorney defendants set forth a clear conflict of interest between their clients, the non-attorney defendants, and BPE, a non-client. Because they would be paid first, the non-attorney defendants' interests were best served by a more conservative yet viable legal theory whereas BPE, which would recover only if the judgment exceeded its debt to the non-attorney defendants, would be inclined to pursue a more tenuous legal theory for the chance at a larger payout.

BPE's amended complaint and opposing memorandum suggest three related bases for imposing a duty: 1) an implied attorney-client relationship, 2) as a non-client to whom a duty was owed and 3) as a beneficiary of a "resulting trust" of which the non-attorney defendants were trustees. All three lack merit and, therefore, the Court finds that the attorney defendants did not owe BPE a duty.

First, no attorney-client relationship can be implied because BPE never sought advice or assistance from the attorney defendants. *DaRoza,* 622 N.E.2d at 607. To support its argument, BPE adds the following threadbare assertion, absent from the original pleading, to its amended complaint:

> BPE sought and obtained legal advice from the Attorney Defendants on numerous occasions with respect to strategy to be utilized in the NASD arbitration.

The facts surrounding the assignment, however, establish the inaccuracy of this contention. Even if, as alleged, the attorney defendants communicated with BPE or BPE's counsel, it defies logic to suggest that BPE sought the attorney defendants' advice. Any "advice" was forced on them, over their vigorous objection, by court order. That appears to be the entire basis for plaintiff's claim. Notwithstanding BPE's unsubstantiated statement, *see La-Chapelle,* 142 F.3d at 508, therefore, the Court declines to find an implied attorney-client relationship.

 Nor can BPE establish that it was owed a duty as a non-client or as a trust beneficiary in light of the clear conflict of interest between BPE and the non-attorney defendants. *See Spinner,* 631 N.E.2d at 544–45; *DaRoza,* 622 N.E.2d at 608. BPE responds to this argument by merely stating that a duty can be owed to non-client and that there is no absolute bar to finding a duty, even if a potential conflict exists. A conclusory statement that a theory is not barred, however, is distinguishable from an argument that such a theory is applicable here. Thus, because this Court finds that a clear conflict of interest prevents a duty from arising, the attorney defendants' motion to dismiss Counts I–III will be allowed.

### 2. Counts IV—VI Against the Non-attorney Defendants

 Counts IV and V allege negligence and breach of fiduciary duty, both of which require plaintiff to establish that the defendants owed it a duty. *E.g., Davis v. Protection One Alarm Monitoring, Inc.,* 456 F.Supp.2d 243, 249 (D.Mass.2006) (negligence); *Qestec, Inc. v. Krummenacker,* 367 F.Supp.2d 89, 97 (D.Mass.2005) (breach of fiduciary duty). Just as with the attorney defendants, the non-attorney defendants argue that they did not owe a

duty to BPE to protect its interests in the PaineWebber arbitration. First, they contend that the Cahaly court did not impose any such duty and that the right to prosecute was unlimited (lacking, for example, any requirement to maximize recovery for BPE). Nor, they maintain, has BPE established a common law, contractual or statutory duty. In short, BPE's allegation that its arbitration claim was "highjacked" is not grounded in a relationship giving rise to a legal duty.

BPE responds that the non-attorney defendants owed a duty by virtue of the assignment. BPE contends that the assignment created a "resulting trust" for its benefit because the assignment did not dispose of all of its rights, just the right to prosecute the claims. BPE asserts that 1) it maintained residual rights, for example, to maximize recovery and to collect and use the proceeds of its claims and 2) those residual rights were held in a resulting trust of which BPE was the beneficiary and the non-attorney defendants were co-trustees. Under that trust, the argument proceeds, the non-attorney defendant trustees owed BPE a duty to act solely for its benefit and, by not doing so, they breached their duty.

With respect to Count VI (breach of contract), BPE contends that an assignment creates a contractual relationship and thus a contract existed between it and the non-attorney defendants that incorporated certain duties. The non-attorney defendants succinctly respond that an involuntary assignment does not create a contract because there is no mutual agreement between the parties. Neither party cites a case in which a duty is inferred from a court-ordered assignment.

■ The Court will deny the non-attorney defendants' motion to dismiss Counts IV, V and VI but, in doing so, it declines to rely on BPE's "resulting trust" theory.

BPE cites no authority for the proposition that a resulting trust exists under analogous circumstances. Nor does it explain why its so-called residual rights would be legally-protected by such a trust if it existed. Moreover, no resulting trust can be implied here because 1) a clear conflict of duties is inconsistent with a trustee-beneficiary relationship, *e.g.*, *Burns v. Mass. Inst. of Tech.*, 394 F.2d 416, 419 (1st Cir. 1968); *Jose v. Lyman*, 316 Mass. 271, 278, 55 N.E.2d 433 (1944), and 2) the concept is inapposite in the context of an involuntary transfer. *E.g.*, Restatement (Third) of Trusts § 7, comment a (explaining that resulting trusts exist to carry out a transferee's implied intentions).

■ Nonetheless, despite the substantial effort devoted to that theory in plaintiff's memorandum, the Court concludes that plaintiff's amended complaint does not stand or fall with it. The complaint contains various references to a duty that are not confined to the context of a resulting trust, including, for instance, a duty arising under the assignment itself. The Court finds, therefore, that plaintiff's core contention against the non-attorney defendants is at least plausible and that is all that is needed to defeat a motion to dismiss. *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

Two points resonate. First, the non-attorney defendants have not established that the right to prosecute BPE's claims in the PaineWebber arbitration included the right to extinguish BPE's original claim and amend the amount of damages sought. To the contrary, the assignment's plain meaning could be read to require prosecution of those claims as they stood when assigned. The non-attorney defendants respond that their actions were justified because, as assignees, they acquired the "right to control the litigation and receive its fruits". In none of the cases cited for

that proposition, however, did the assignee inherit one claim and then entirely alter the theory of the case or abandon the assigned claim. On the sparse record currently before the Court, therefore, the non-attorney defendants have not met their burden.

Second, even if a resulting trust was not created, BPE is correct that the particular assignment here carries some indication of less than an unconditional assignment. As BPE reiterates, the claims were only assigned "for prosecution". Moreover, the attorney defendants apparently communicated with and, later, were required to consult BPE's counsel before any filing related to the arbitration award. Such restrictions differ from an assignment of any and all rights to a claim.

In the end, it is quite possible that plaintiff's fight was lost the day that its claim was assigned. To allow a motion to dismiss, however, defendants must leave the Court with no doubt that a cause of action does not lie. The Court is not so thoroughly convinced and, accordingly, the motion to dismiss Counts IV–VI will be denied.

### 3. Counts VII and VIII Against All Defendants

Defendants both argue that claims brought under consumer protection statutes of Massachusetts and Connecticut fail as a matter of law. With respect to M.G.L.c. 93A, the attorney defendants dispute that they are engaged in the kind of trade or commerce cognizable under that statute. They contend that their only relationship with BPE (as a non-client and former adversary in litigation) is an insufficient commercial relationship to support a claim for relief. *E.g., First Enters., Ltd. v. Cooper,* 425 Mass. 344, 680 N.E.2d 1163, 1165 (1997). The non-attorney defendants do not seek dismissal of this claim as a matter of law.

With respect to the Connecticut statute (CUTPA), the attorney defendants assert that a claim of professional malpractice must be based upon "entrepreneurial aspects" of the law profession and that this case cannot be so classified. *Beverly Hills Concepts, Inc. v. Schatz and Schatz, Ribicoff & Kotkin,* 247 Conn. 48, 717 A.2d 724, 740 (1998). The non-attorney defendants argue that their actions in this case are not their primary trade or commerce because they are not in the business of prosecuting arbitration claims and, as such, the statute does not cover BPE's claim against them. *See McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.,* 93 Conn.App. 486, 890 A.2d 140, 164 (2006).

BPE responds that all of the defendants are engaged in trade or commerce cognizable under the state statutes because they "are engaged in the trade or practice of bringing lawsuits against [BPE]." BPE cites no case law in support of its contention which is wholly without merit. Accordingly, Counts VII and VIII against the attorney defendants will be dismissed and Count VIII against the non-attorney defendants will be dismissed.

### 4. Statute of Limitations

In most instances, the date on which a cause of action accrues is a question of fact to be decided by the trier of fact. *Taygeta Corp. v. Varian Assocs., Inc.,* 436 Mass. 217, 763 N.E.2d 1053, 1063 (2002). Generally, a cause of action accrues when a party knows or should have known that it has suffered appreciable harm. *E.g., Lyons v. Nutt,* 436 Mass. 244, 763 N.E.2d 1065, 1069–70 (2002). Where claims arise out of alleged legal malpractice, the statute can begin to run before a case is ultimately lost and without knowledge of the full extent of damages because, for example, even incurring additional le-

gal expenses constitutes appreciable harm. *Frankston v. Denniston,* 74 Mass.App.Ct. 366, 907 N.E.2d 244, 251 (2009). It is also possible, however, that absent some measurable detriment such as legal fees, harm may remain unknown until a judgment is announced. *See Spilios v. Cohen,* 38 Mass.App.Ct. 338, 647 N.E.2d 1218, 1219–20 (1995).

 Here, defendants contend that all but one count are time-barred. The Massachusetts Consumer Protection Act incorporates a four-year statute of limitations and all other claims except Count VI include a three-year limit. Defendants allege that BPE knew that it had suffered appreciable harm when it became aware that defendants were altering its theory in the PaineWebber arbitration. The harm alleged is the substantial reduction in damages available to BPE in the arbitration which was manifested by the defendants' altered and reduced claim. Defendants also indicate that BPE incurred legal expenses related to their alleged misconduct when its counsel objected to the assignment and communicated with the attorney defendants about the arbitration. The incurrence of those fees, which should have put BPE on notice of the alleged misconduct, occurred more than three years before the filing of this law suit and thus, defendants argue, the applicable statutes of limitations have run.

Moreover, defendants assert that BPE's recent amendments to its complaint do not obviate the grounds for dismissal. In its amended pleading, BPE alleges that it did not suffer actual injury until the arbitration judgment was entered because 1) the attorney defendants could have reinstituted the original larger claim or 2) the arbitration panel could have, *sua sponte,* awarded $88 million in damages. Defendants respond by labeling those allegations as conclusory and speculative. They reiterate that BPE was on notice that $88 million was no longer sought by at least July, 2005 when defendants filed their amended statement of claim.

BPE sur-replies with two arguments:

1) deciding when a cause of action accrues is inappropriate on a motion to dismiss, and

2) no appreciable harm was suffered until the arbitration panel entered judgment, which was less than three years before it filed suit. Before that time, harm was only speculative.

The Court declines to declare BPE's claims time-barred based on the instant motions. To be sure, the amended complaint does, as defendants argue, contain some speculation concerning the accrual of the cause of action. Nonetheless, defendants' repeated assertion that a cause of action may accrue before judgment is unavailing here because, unlike the cases cited, the record before this Court does not show that BPE incurred any legal expense or other tangible harm before the arbitration judgment was rendered. Defendants' position seems to be that BPE must have incurred legal fees at some point because its counsel spoke to the defendants. Such unsubstantiated claims, however, are insufficient to support a motion to dismiss.

Moreover, although hindsight reveals that the arbitration panel was obviously disinclined to award damages of $88 million, the amended complaint plausibly supports plaintiff's argument that such an award was possible. Specifically, accepting plaintiff's allegations as true, as the Court must, the complaint alleges that plaintiff's original arbitration claim was for $88 million in compensatory and *punitive* damages. The amended statement of claims sought $8.6 million in compensatory damages as well as an indeterminate amount of punitive damages. The only

case cited as precedent for punitive damages awarded an amount equal to 20 times compensatory damages. Applying that multiplier to the $8.6 million compensatory demand would yield punitive damages well in excess of the original demand.

In short, defendants have failed to show that plaintiff knew, or should have known, that it suffered appreciable harm before the award and, therefore, the motions to dismiss will be denied on that basis.

### ORDER

In accordance with the foregoing,

1) the non-attorney defendants' motion to dismiss (Docket No. 28) is, with respect to Count VIII, **ALLOWED**, and, with respect to Counts IV–VII, **DENIED**.

2) the attorney defendants' motion to dismiss (Docket No. 30) is **AL-LOWED**.

**So ordered.**